## Will Renner v. The State.

### No. 2470.　Decided December 11, 1901.

**1.—Murder—Charge of Court—Principals.**

On a trial for murder which was caused by pouring gasoline and turpentine on the clothing of deceased, which was then set on fire, and the court charged the jury: "If you are satisfied from the evidence that turpentine and gasoline, either or both, were poured or placed upon the person of deceased, and that he, deceased, was set on fire after said turpentine and gasoline, either or both, had been poured on him, and that at the time, or just before, the match was lighted that fired said liquid, if it was so ignited, defendant, with a sedate and deliberate design poured turpentine on said deceased and was present with C. and F. (con-

federates) leaning over the body of said deceased when said match was so ignited, and that the act of so setting fire to deceased might probably end in his death, and that defendant reasonably knew it might so result, then defendant would be guilty as a principal as charged, whether death was intended or not, and you should so find." Held, erroneous, as being directly upon the weight of evidence, and authorized a conviction upon a state of case that would not have made defendant guilty as a principal.

**2.—Same—Principal.**

On the case as above stated, in order to make defendant a principal, he must not only have been present at the time deceased's clothing was set fire to by the other parties (C. and F.), but he must have been a principal in the burning; or, having applied the turpentine to deceased's clothing in connection with the other parties, have subsequently agreed to setting deceased's clothing on fire.

**3.—Same—Liability for Acts of Codefendant—Charge.**

Where one conspirator commits a crime, and there is no proof that another, being present, knew of the intention and participated in it or did any overt act indicating complicity, he can not be held responsible for it; and if there is doubt on this proposition, the charge must be framed in accordance with that doubt, and the guilt of defendant must not be assumed and so charged to the jury under such circumstances.

**4.—Independent Act of Coconspirator.**

An independent felonious act, committed by one coconspirator, which is foreign to the common design and without the knowledge or consent of the other coconspirators, is not imputable to such other coconspirators; nor are they responsible for independent acts growing out of the particular malice of individuals.

**5.—Same.**

A party present when an offense is committed by another, although he may have aided or encouraged such others by words or gestures, is only guilty of its commission to the extent of his knowledge, or for the natural or reasonable consequence of the acts aided or encouraged by him.

**6.—Same.**

If a defendant entered into a conspiracy with C. or F., or any of the other parties, to place turpentine or gasoline upon the body of deceased for the purpose of a joke, or of causing him to get up and leave the saloon, and this was the extent of his connection with the matter, and he did not assent to the burning nor aid in some way in so doing, so as to make him a principal, he would not be guilty of the burning.

**7.—Same—Evidence—Acts of Coconspirator.**

Where there was evidence that prior to placing the turpentine upon the clothing of deceased, one of the codefendants, F., had a rope with a running noose; and there was also evidence that prior to the placing the turpentine on deceased's clothing a drink was given deceased by said F., which had in it something out of a small bottle, the inference being, that it was a narcotic; Held, this testimony, while admissible as against F., would not be admissible against this defendant unless he was shown to be a principal in the burning; and the charge of the court should have instructed the jury to this effect.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Chas. F. Clint.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The indictment charged appellant with the murder of C. P. Bane, and was similar in its allegations to the indictment in the cases of Faulkner v. State, and Chapman v. State, ante, pages 311 and 328, this case being a companion case to those cases.

The important facts attendant upon the killing will be found concisely stated in the opinion of Judge Henderson in Faulkner v. State, ante, page 311.

No further statement necessary.

*Kearby & Kearby,* for appellant.

*J. C. Muse, Stillwell H. Russell,* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

This being a companion case to Faulkner v. State, ante, page 311, and Chapman v. State, ante, page 328, recently decided, some of the questions arising in this record will not be discussed.

After retiring, the jury communicated with the court, and the following matters occurred: Through their foreman they delivered the following paper, to wit: "Hon. Chas. F. Clint, Judge: If I find by the evidence that up to the time the fire was applied to Bane, Renner had no knowledge that Bane was to be killed by burning, nor did he aid or encourage in any way, have anything to do with the setting of fire to Bane; further, that what he had to do in the matter previous to the time that Bane was set on fire was only for the purpose of playing a joke on Bane; further, that on account of Renner's knowledge of the turpentine and gasoline having been poured on Bane, and Renner failing to make an effort to extinguish the flames,—will it be considered as expressing such a disregard for human life as necessarily includes the formed design against the life of the person killed, as stated in the charge? Can the foregoing clause apply to this case? Further, if I find that Renner had no knowledge that Bane was to be killed by burning, can the clause of the charge which states as follows: 'Mere presence and silence of a party at the commission of an offense does not of itself make him a principal. Nor does the mere knowledge that an offense is being or about to be committed, make such party a principal,' etc.,—be applied in this case? [Signed] E. C. Baker, foreman." They also submitted the following questions and answers: " 'Do you believe that Renner went for the first package of turpentine? Yes. Do you believe he saw it poured on Bane? Yes. Do you believe one of the Pruitts went for a second package? Yes. Do you believe that Chapman poured gasoline on Bane? Yes. Do you believe that Renner was within two feet of Bane just after the match was applied? Yes. Do you believe that Renner took Pruitt by the arm and said, "Let's go; this place is too tough for me?" Yes.' The above questions were put to Juror Abbott. [Signed] L. D. Busbee. E. C. Baker, foreman." The court replied to these questions and this communication as follows: "In answer to the questions propounded through your foreman, you are instructed as follows: First. If you are satis-

fied from the evidence that turpentine and gasoline, either or both, were poured or placed upon the person of C. P. Bane, and that defendant knew of that fact, and that defendant himself procured part of said turpentine to be poured upon said Bane, and that he, the said Bane, was set on fire after said turpentine and gasoline, either or both, had been poured upon him, and that at the time or just before the match was lighted that fired said liquid or liquids, if it was so ignited, defendant, with a sedate and deliberate design, poured turpentine on said Bane, and was present with Chapman and Faulkner, leaning over the body of said Bane, when said match was so ignited, and that the act of setting fire to said Bane might probably end in his death, and that defendant reasonably knew it might so result, then defendant would be guilty as a principal as charged, whether death was intended or not, and you should so find. [Second. In answer to your question, look to the general charge in connection with the above instruction." ] This proceeding, as well as the charge, was excepted to upon various grounds, and appellant submitted the following special charge, which was refused: "You are told in answer to your query that if you find the facts to be as stated, you will acquit the defendant. Before you can find him guilty, you must find beyond a reasonable doubt that he was actually present at the time the fire was ignited, and, knowing the unlawful intent of Chapman and Faulkner, aided and abetted therein. If his participation therein was without knowledge of their unlawful intention, he could not be guilty. His failure to try to extinguish flames would not make him guilty, unless, as hereinbefore stated, he had knowledge of the unlawful intent of the other parties. If what he did was in a joke, you are told to acquit him. Before he could be bound by the acts of others, he must have had a knowledge of their guilty intentions." The court's charge was directly upon the weight of the evidence, and authorized a conviction upon a state of case that would not have made him guilty as a principal. This record presents possibly three theories as to this transaction: The first, that Faulkner and Chapman had an agreement between themselves with reference to Bane, either to do him personal injury, or put him in an unconscious condition by narcotics and intoxicants so they might secure his money. If this conspiracy or agreement had an existence as between these two parties, it occurred prior to the appearance of Renner upon the scene. Second. When Renner came into the saloon there may have been another agreement between the parties, or at least an acting together to the effect that they were to put turpentine on the body of Bane while he was in a drunken and semi-unconscious condition, so as to make him move away from the saloon. Third. That, failing in this, a match was applied to his clothes, which had been saturated with turpentine and gasoline, which set them on fire, and caused the destruction of his life. If Renner's connection with the matter only contemplated the placing of turpentine and gasoline upon the clothes of Bane with the view of making him leave the saloon, or as a "joke," as some of the witnesses term it, and that was the scope of his agreement or connection with the matter, and Faulkner and Chap-

man, either or both, without his concurrence, advice, or aid, set fire to the clothes of Bane, and destroyed him by fire, Renner would not be responsible for the murder, whether he was or was not present. In other words, if the burning of Bane was beyond the contemplation of the acts and agreement of Faulkner, Chapman, and Renner, but was simply the acts of Faulkner and Chapman, either or both, without the concurrence of Renner, this would eliminate Renner from the act of burning. And it would make no difference that Renner may have been leaning over the body of Bane at the time Chapman or Faulkner set fire to his clothes. Renner must not only have been present at the time this was done, but he must have been a principal in the burning; or having, in connection with the others, applied turpentine to his person, subsequently agreed to the setting of his clothes on fire. The facts in relation to Renner's attitude and connection with the case were the subject of considerable diversity of statement by the witnesses. Where one conspirator commits a crime, and there is no proof that another being present, knew of the intention, and participated in it, or did any overt act indicating complicity in it, he can not be held responsible for it. Mitchell v. State, 36 Texas Crim. Rep., 278; Burrell v. State, 18 Texas, 713; Marwilsky v. State, 9 Texas Crim. App., 377. If there is a doubt from the testimony upon this proposition the charge must be framed in accordance with that doubt, and the guilt of defendant must not be assumed, and so charged to the jury under such circumstances. Again, if two or more engage in the common design to do an unlawful act, and one of them, incited by his own particular malice, or even to further the escape of all, whether without knowledge or consent of the others, does a felony foreign to the common design, his felonious act is not imputable to his confederates. Mercersmith v. State, 8 Texas Crim. App., 211. It is an accepted doctrine that, if two or more conspire and confederate to do an offense, and such offense is committed, all present are guilty as principals, and each party is responsible for collateral acts growing out of the general or common design; but not for independent acts growing out of the particular malice of individuals. Stevenson v. State, 17 Texas Crim. App., 619. Where there is no conspiracy to commit an offense, still, if an offense be committed by one, and the accused was present, and knew the intention of the other or others, and aids by acts or encourages by words or gestures the person engaged in the commission of the offense, he would be guilty of the offense committed; but he would be guilty only to the extent of his knowledge, or for the natural and reasonable consequences of the acts aided or encouraged by him. Lyons v. State, 30 Texas Crim. App., 642; Blain v. State, 30 Texas Crim. App., 702. Tested by these decisions and rules of law, the charges given by the court in answer to the questions of the jury are not only charges upon the weight of the evidence, but assume facts strongly adverse to appellant, which authorized his conviction.

Appellant requested the following charge, which was refused: "You are instructed that, if you should find and believe beyond a reasonable doubt that an unlawful conspiracy to slay C. P. Bane had been formed

between John Chapman and Eugene Faulkner at the time of or before the defendant entered Chapman & Faulkner's saloon, then, in that event, before this defendant could be convicted, he must have had knowledge of the conspiracy, if any, and aided and abetted therein, as charged in the main charge." This charge, taken in connection with the above charge requested by appellant to be given the jury in answer to their query, should have been given, or the principle announced in the two charges should have been given the jury. If appellant entered into a conspiracy with Chapman or Faulkner, or any of the parties connected with the transaction, to place turpentine and gasoline upon the body of Bane for the purpose of a joke, or of causing him to get up and leave the saloon, and this was the end and scope of his connection with the matter, and that he did not assent or agree to the burning, or did not aid in some way in so doing, so as to make him a principal, then he would not be guilty of the burning. This question should have been submitted to the jury. It was one of the issues made by the testimony. Whatever the trial court may think of the testimony, it is a matter the solution of which is lodged alone with the jury, under appropriate instructions.

There was evidence introduced that prior to the placing of the turpentine upon the body of deceased Faulkner had a rope with a running noose, and there was also evidence introduced that some time prior to the burning, and before the turpentine was placed upon the body of Bane, a drink was given Bane by Faulkner, which had included in it something out of a small bottle, the inference being that it was a narcotic. This testimony was admissible as against Faulkner and Chapman, and, if the conspiracy or agreement or acts of Renner comprehended the death of deceased, then these matters would be evidence against him. But if there was a conspiracy between Chapman and Faulkner to take the life of Bane, and Renner was not aware of that fact, then this evidence would not be admissible against him, unless he was a principal in the burning. The court's charge should have directed the jury particularly to a proper consideration of these matters. What acts or declarations of conspirators or seeming coconspirators would be evidence against another one of the party, where it is left doubtful as to whether such acts include the third party, is sometimes a matter of serious trouble; but, under any view, where it is left in doubt by the testimony as to whether or not a party was included within the conspiracy to do the act committed, the doubt as to his connection with the transaction should be submitted to the jury for solution under appropriate instructions from the court. The doubt in regard to testimony where the guilt of the accused is the issue must be solved in favor of the accused. The law so orders it. It is not the law to assume a doubtful fact against the accused. The presumption of innocence and the reasonable doubt has been placed on the side of the party whose life or liberty is sought. And it would make no difference how horrible the crime itself might be, for the reason would be stronger that the court should more closely guard the issues, for fear the jury might be swerved by the horror

of the details and enormity of the imputed crime. It is comparatively easy for the jury to resolve the doubt in favor of defendant where the testimony is on doubtful lines as to guilt; but where the circumstances are of a revolting character those safeguards guaranteed by our Constitution and law should be the more closely watched, so that the accused may have that fair trial at the hands of the jury provided by the Constitution. As before stated, we deem it unnecessary to notice some other questions that have been raised upon this record, because they have been discussed in the companion cases of Faulkner and Chapman.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*

[Note.—The State's motion for a rehearing was overruled without a written opinion.—Reporter.]