## Murray Cecil v. The State.

### No. 2616. Decided February 11, 1903.

**1.—Murder—Evidence.**

On a trial for murder, the testimony of a witness, that he knew deceased and used to work for him, was harmless and could not have injured defendant.

**2.—Same—Impeachment of Witness—Corroboration of.**

On a trial for murder, where defendant had introduced testimony to the effect that he heard a State's witness, a short time after the killing, say that he did not know who did it, it was competent for the State, in rebuttal, to corroborate the witness by proving that he said a man named Murray (defendant's Christian name) did it.

**3.—Same—Evidence.**

On a trial for murder, where the defense was that one B., and not defendant, did the killing, and it was proved that the person who stabbed deceased ran by a certain street corner, it was competent to prove that the party the witness saw running was not B.

**4.—Same.**

On a trial for murder, where defendant claimed that the killing was done by B., and not by defendant, it was not competent to prove the acts of said B. the night of the homicide, and his acts and movements on the day following. (See opinion of Davidson, Presiding Judge, and Brooks, Judge.)

**5.—Same.**

Where defendant claimed that the killing was done by B., it was not competent to prove by an officer, that he did not arrest B. the next day or the day thereafter.

**6.—Murder—Evidence—Dismissal of Indictment Against a Codefendant.**

On a trial for murder, where defendant claimed that it had been committed by one B., who was also indicted, it was not competent to show that the case had been dismissed because, in the opinion of the prosecuting attorney, the evidence against B. was insufficient. It was an indirect method of getting before the jury the opinion of the prosecuting attorney, that B. was innocent, and was evidence very hurtful to defendant.

**7.—Same.**

Nor was it competent to introduce the original indictment, which had been dismissed, which was an indirect method of getting before the jury the opinion of the grand jury, that B. was guilty of the murder.

**8.—Same—Evidence.**

On a trial for murder it was competent for defendant to show that a certain witness stated on the examining trial that he did not know who did the killing; and the evidence was competent although such statement by said witness did not appear in the examining trial evidence.

**9.—Same—Charge.**

On a trial for murder in a difficulty where defendant and one B. made an assault upon deceased, in which defendant claimed that B. did the stabbing which caused the death, the court should have charged that if defendant's insistence was proved, and that there was no conspiracy between defendant and B., and that defendant had no knowledge that B. was stabbing deceased, and that defendant's intention was only to commit an assault, without any intent to kill, then they could not find him guilty of murder.

**10.—Same.**

The court, upon the above facts, should also have charged the jury to acquit defendant if B. killed deceased without any assault having been made by defendant, or any aid or assistance rendered by defendant to B. at the time.

Appeal from the Criminal District Court of Dallas. Tried below before Hon. Charles F. Clint.

Appeal from a conviction of murder in the second degree; penalty, fifty years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Joe Gwinn, on the 7th day of July, 1900, by stabbing him with a knife, and by stabbing and cutting him with some sharp instrument.

The following is the statement of the facts as made in appellant's brief:

On Saturday, July 7th, the deceased, Joe Gwinn, and the principal State witness, E. M. Brooks, began dissipating in the city of Dallas. Late in the afternoon they left the city for a time, but returned about dark and entered the first saloon they came to, in the northern part of the city; the two negroes, Murray Cecil and Berry Blankenship, being there, the four proceeded on a homogeneous drunk. They drank southwardly on Central Avenue 'and westwardly on Elm Street until they reached the "Buckhorn corner," at the intersection of Elm and Pearl streets. If they missed any saloon on the route the record does not disclose it. In one of the saloons along the route Berry Blankenship gave to the deceased white man, Joe Gwinn, $3, which was to be invested for a pair of shoes for Blankenship's wife. About 11 or 11:30 p. m., as the result of a drunken quarrel about this $3, one of the negroes killed Joe Gwinn, the custodian of the $3.

When Charley Brantley saw Blankenship attack Gwinn with a knife, being near by, he ran at once into a store to get a club or weapon. When he got to the corner Blankenship had disappeared. He and a boy named Frank Wilson gave chase to appellant, or at least to the negro whose clothing answered that of defendant. Both negroes were indicted. Several months after the homicide Cecil was arrested in California. In October, 1901, more than a year after the killing, Blankenship's case was dismissed, and about a year thereafter, on September 25, 1902, this defendant was convicted in this cause.

The State introduced only one eyewitness to the homicide or to the facts immediately preceding it and this was E. M. Brooks, the surviving white man of the drinking party. The defendant introduced two eyewitnesses to the killing and the facts immediately connected therewith, to wit, W. J. Miller and Charles Brantley, and also introduced W. F. Swain and W. J. Williams, witnesses to the facts and conversations right up to the moment, although they did not see the parties at the very moment of the cutting.

Brooks, after bringing the facts down to the time of the quarrel and the cutting, testifies that appellant and Cecil began a quarrel with deceased (Gwinn) about Blankenship's $3, and because Gwinn would not give the money to him, appellant cut and killed Gwinn. He cuts Blankenship out of the difficulty utterly, and gives as the only cause of the trouble that Cecil wanted Blankenship's money of Gwinn. He says Blankenship was not belligerent and did not quarrel with Williams or Gwinn. At the corner Cecil said, "You have got that money and I am going to have it," and when Gwinn turned and started down the street Cecil jumped on him. Brooks further says: "At the time the cutting occurred I was about a step or two from Murray Cecil. Blankenship

was behind me two or three steps. Berry Blankenship was at no time in reach of Joe. He did not strike him; he did not cut him; he did not make any attempt to cut him."

Now on the other hand, the four sober, disinterested men dispute the drunken witness Brooks in toto as to the identity of the negro who was in the quarrel with Gwinn and who did the cutting. All the acts and words attributed by Brooks to Cecil, they attributed to Blankenship. They say that Blankenship raised the row with Williams; Blankenship was going down the street with deceased; Blankenship and deceased were quarreling; Blankenship and deceased were to go the corner and settle their difficulty, and when they got to the corner Blankenship drew his knife and was the man who attacked the deceased. Brantley, it is true, did not know the difference in the negroes except as to their clothing, and one was pointed out to him. There is not the slightest doubt that the negro with the jumper on was Blankenship, and he was the one Miller and Brantley saw cut the deceased, and that was Blankenship. Brantley on cross-examination states that Blankenship cut deceased with his knife, but the other also struck him. Brantley does not say on cross-examination or elsewhere that Cecil used a knife or other weapon. On the contrary he used this language: "I saw one of them holding his arm like he was cutting him. I saw one of the negroes make a move and went at him in pretty close position. I call this a fist fight." The man in front with the jumper on was the one who ran his hand in his pocket, and was cutting. The other was the one who seemed to use his fist.

*Robt. S. Seay,* for appellant, filed an elaborate and able brief.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifty years; hence this appeal.

It appears from the record that deceased, Joe Gwinn, and another white man were together in the city of Dallas on the night of the homicide. They met appellant Murray Cecil and Berry Blankenship, two negroes. The parties drank together a number of times, and all of them seemed to be more or less under the influence of liquor. During the time, Berry Blankenship gave deceased $3 to keep for him, in order to buy his wife a pair of shoes. Subsequently it seems that a return of this money was desired, and appellant insisted on the deceased giving it up, and the difficulty occurred in regard to this matter. The homicide occurred on the street at night; deceased being stabbed with a knife. The testimony of the State tended to show that Murray Cecil alone did the stabbing. Defendant's theory was that Berry Blankenship did the stabbing, and he introduced some testimony tending to show this. This is a sufficient statement of the facts to present the errors assigned.

In the first bill of exceptions, appellant excepts to the testimony of a number of witnesses. We think the testimony of Brooks to the effect that "I know Mr. Joe Gwinn, and used to work for him," was admissible; at least, it could not have injured appellant. The testimony of Stampley, to the effect that, a short time after the killing, he heard Brooks say that it was done by a man by the name of Murray, is objected to. This testimony, as explained by the court, was admissible, inasmuch as appellant showed that Brooks said after the killing that he did not know who it was that did it; and this testimony was in rebuttal and corroboration of Brooks' evidence. We also think it was permissible to show by the witness Hearst that the man he saw run by the corner of Pearl and Elm streets near the place of the homicide was not Berry Blankenship, it being shown by other testimony that the person who stabbed deceased ran by there; and it being claimed by appellant that Berry Blankenship did the killing, it was legitimate to show that this person was not Blankenship, because the guilt or innocence of Blankenship was a legitimate issue, and it was competent for the State to introduce any legal testimony showing that Berry Blankenship was not the party who killed deceased. We also think it was competent for the State to show the movements of Berry Blankenship during that night, the next day, and subsequent to the homicide. But it was not competent for the State to introduce in evidence some act or conduct of some third party, indicating to the jury his opinion as to the guilt or innocence of Berry Blankenship. And so it was not competent to prove, as was done by Henry Jacoby, that he did not arrest Berry Blankenship for said offense the next day or the day thereafter. This was an indirect method of getting before the jury the opinion of said officer as to the guilt or innocence of said Blankenship.

Nor was it competent for the State to introduce in evidence the motion to dismiss the case against Blankenship by the county attorney. This motion states that the case was dismissed because the State admitted the evidence insufficient to support a conviction. The court intimates that this testimony was admissible, because the defendant claimed all along that Berry Blankenship's case was dismissed because of a contract with the State. If such a claim was made by any testimony, the court should have so stated; and, in that event, it might have become proper to show that there was no contract by which Berry Blankenship was to turn State's evidence; but certainly it was not competent to show, in the attitude in which this case was presented, that the cause against Blankenship was dismissed because, in the opinion of the State, the evidence against him was insufficient. This was an indirect method of getting before the jury the opinion of the State, through its prosecuting attorney, with the indorsement of the court, as to the innocence of Blankenship, and was very hurtful to appellant.

We further believe that evidence introduced by the State of the original indictment, or the substance thereof, by Herman Mueller, which it seems had been dismissed, was not competent. This was an indirect

method of getting before the jury the opinion of the grand jury, shortly after the homicide, to the effect that they believed appellant was guilty. The court explains this bill by stating that defendant was contending that Blankenship alone was guilty, and that the record so proved, and the above indictment was admitted to show the facts. Of course, it was competent for defendant to contend and prove, if he could, that Blankenship alone was guilty of the charge, but it was not legitimate rebuttal testimony for the State to show what the grand jury thought or did in that regard.

We hold that it was proper for the defendant to show, as he attempted to do, that on the examining trial Brooks stated that he did not know who did the killing, and this regardless of whether or not such statement was contained in the examining trial evidence.

We do not believe it was competent for the defendant to show, in connection with the testimony of the witness Brantley, what Williams said to him, at the time he pointed out Berry Blankenship, on the night of the homicide.

The court should have charged, on the testimony elicited by appellant on his contention, to the effect that if the jury believed the parties engaged in a difficulty, and both appellant and Blankenship made an assault on deceased, but that Blankenship did the stabbing, without any previous conspiracy on their part, and without any knowledge at the time on the part of appellant that Blankenship was so stabbing deceased, and that the intention and purpose of the appellant at the time was simply an assault without any intent to kill, then they could not find him guilty of murder.

And the jury should have also been instructed that if Berry Blankenship killed deceased, without any assault being made by appellant or any aid or assistance rendered by appellant at the time, they should acquit appellant.

For the errors discussed, the judgment is reversed and the cause remanded.

                                        *Reversed and remanded.*

DAVIDSON, Presiding Judge, and BROOKS, Judge.—We concur in reversal of the judgment, but we do not agree that the acts of Berry Blankenship during the night of the homicide and subsequent thereto could be used as evidence against appellant; nor could his acts and movements on the day following be so used. Appellant was in no way connected with said acts or movements, and not bound by them. These matters were not res gestae, were acts of a "third party," not suggested by or known to or by appellant. Appellant was guilty, if at all, by reason of his act and intent, and not by what Blankenship did not do or what he did after the separation of the parties.