## HARRIS AND TOM JENKINS V. STATE.

### No. 2350. Decided March 12, 1913.

**Murder—Charge of Court—Malice—Joint Defendants.**

Where, upon trial of murder of joint defendants, there was evidence that one of the defendants did not participate in the homicide, a charge of the court which only authorized an acquittal of either of the defendants in the event that neither acted with implied malice, and which did not segregate the individual intent of each defendant in submitting the law on principals, and without submitting the converse of such proposition, there was reversible error.

Appeal from the District Court of Walker. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of murder in the second degree; penalty, twelve years imprisonment in the penitentiary for each defendant.

The opinion states the case.

*Dean, Humphrey & Powell,* for the appellant.—On question of the court's charge on murder in the second degree: Burns v. State, 58 Texas Crim. Rep., 463.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellants were jointly indicted and jointly convicted for the murder of Claude Mack, each being alloted a term of twelve years in the penitentiary for murder in the second degree.

The night of the homicide, and shortly prior thereto, Harris Jenkins and the deceased had some words, which grew out of their relation to a woman. Tom Jenkins was not present at the time and had no participancy in that matter. This occurred at a social function among the negroes. Shortly after this trouble the social affair ended. The deceased was traveling a road supposedly en route home. The woman about whom the trouble occurred had gone the same road which deceased was traveling. The two defendants traveled the same road. The theory of the State was they followed the deceased for the purpose of raising a difficulty with a view of killing him. The evidence for the defendants was to the effect that the defendant Harris Jenkins had gone the road to overtake the woman. It is also made to appear that Harris Jenkins had been intimate with the woman, and a child was the result of this illicit relation. Harris Jenkins' contention and his evidence was to the effect that he wanted to see the woman, and the evidence shows for the defendants that his brother, Tom Jenkins, went with him and was trying to persuade him to let her alone and go home, and that while going down the road hunting the woman they came upon the deceased and the tragedy followed. In regard to the immediate facts attending the killing, the

State's theory was the defendants, when they discovered the deceased sitting near the road side, accosted him; he got up and asked if they wanted him; an affirmative reply was given, the State contending that Tom Jenkins made the reply, whereas defendants denied this, insisting that Tom Jenkins said nothing. The deceased approached the defendants while they were on their horses. The State's version of this is that Harris Jenkins immediately pulled his pistol and began firing, the deceased trying to get his pistol out in the meantime. The appellants' theory is that the deceased pulled his pistol when he got up and fired a time or two before Harris Jenkins fired. The deceased is shown to have fired four shots, the evidence being a little indefinite as to how many Harris Jenkins fired. No one testifies that Tom Jenkins was armed or fired a shot. So it will be seen, narrowed down to its final analysis, the State's contention was, the two defendants followed the deceased and brought on the difficulty, while the defendants' theory was that Harris Jenkins was hunting his mistress, accompanied by his brother, who was trying to persuade him not to go in that direction, and the meeting with the deceased was casual and accidental. The State's theory was that the killing occurred in pursuance of a conspiracy; the defendants' theory was, first, that Harris Jenkins was acting purely in self-defense, and second, that Tom Jenkins took no part in the transaction except as a bystander.

The court gave the following charge: "If you fail to find from the evidence beyond a reasonable doubt that the defendants, Harris Jenkins and Tom Jenkins, or either of them with implied malice, as the term implied malice is herein defined to you, did in the County of Walker and State of Texas, on or about the time alleged in the indictment, did unlawfully shoot and thereby kill the said Claude Mack, then you should acquit the said defendants or such defendant of murder in the second degree." Many objections were urged to this charge, among others, that the jury was only authorized to acquit the defendants in the event that they should find that neither of them with implied malice shot and killed the deceased. Another objection urged is that the charge was misleading and confusing in that the jury was instructed that they should acquit the defendants of murder in the second degree only in the event they failed to find from the evidence beyond a reasonable doubt that the defendants or either of them with implied malice, etc., unlawfully shot and killed deceased, and that the court does not in said charge or paragraph or anywhere else instruct the jury that if they fail to find from the evidence beyond a reasonable doubt that either of the defendants with his implied malice, etc., shot and killed deceased, they should find such defendant not guilty of murder in the second degree. To say the least of it, this charge is very awkwardly drawn, and subject to the criticism. The jury should have been told plainly and without circumlocution that if either one of the defendants killed the deceased upon implied malice, he should be convicted, and if the other did

not or was not aiding and abetting as a principal the other in the killing, that he would not be guilty of murder in the second degree. It is far from clear that the quoted charge does so instruct the jury; especially is this criticism correct, we think, in view of the preceding section of the charge, which authorizes the jury if they believed the parties were acting together as principals and did this killing, they would both be guilty, that section of the charge nowhere segregating the two as to culpability of murder in the second degree. In this connection and with reference to the entire charge, it may be further said that the jury was not plainly told anywhere in the charge that they might acquit one and convict the other. While upon this phase of the charge it will be unnecessary to go into a general statement of the other exceptions to the charge presenting this same line of thought. Now, the court charged the jury with reference to principals, connecting the defendants under the law of principals and making them guilty if they acted as principals, but nowhere is the converse of this proposition presented, that is, if they were not principals they could not convict Tom Jenkins, although they might convict Harris Jenkins. Having submitted the law of principals under the facts above stated in this opinion, it was necessary to guard the legal rights of Tom Jenkins that the jury be instructed if these parties were not acting as principals, then they could not convict Tom Jenkins. In that even Harris Jenkins would only be responsible, self-defense aside. Harris Jenkins, under this testimony, might be guilty and Tom Jenkins not guilty, even from the State's standpoint. In any event, from all the evidence, this issue is sharply drawn, and the defendant Tom Jenkins' whole case was fought out upon the theory that he was not a principal and did not aid in any manner his brother in doing the killing, and not only so, but was with him for an innocent purpose. While the State's testimony might combat this idea, still the defendant is entitled to the view of the case as made by his testimony or by any other facts in the case that might be solved in his favor.

There are some other exceptions to the charge pointing out specifically here and there matters tending in the same direction and hanging around, as we understand it, the pivotal point. Without taking these matters up and going over them in detail, suffice it to say the case ought to have been submitted to the jury from the theory of the defendants, that unless they were acting as principals, that they might convict one and acquit the other. It is not intended by this to say that the court should abridge the defendants' right of self-defense in case the deceased made the first attack. If that was true, if Tom Jenkins was encouraging his brother to kill deceased after the attack of deceased, he would not be guilty. Two propositions we are intending here specifically to decide: first, that the court in his charge must properly segregate the two defendants to the jury, and, in the next place, that having given the charge of principals in the matter, then

the converse of that proposition must be submitted to the jury. As before stated, without taking up the different issues of the case seriatim, the court will understand from the above statement the theory upon which this case ought to have been tried, and if the facts are the same it should be so tried before another jury.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*