RAMON PIZANA v. THE STATE.

No. 4404.   Decided March 21, 1917.

**1.—Murder—Principals—Self-defense—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue that defendant's brother in shooting the deceased acted in his own necessary self-defense, the

court should have instructed the jury as requested that if they believed this from the evidence, etc., they should acquit the defendant. Following McMahan v. State, 46 Texas Crim. Rep., 540, and other cases.

### 2.—Same—Rule Stated—Self-defense.

One can not be convicted for aiding and abetting any homicide where the person actually doing the killing was justified in so doing in self-defense, and the jury, under the facts in the instant case, should have been so advised. Following Patton v. State, 62 Texas Crim. Rep., 71, and other cases.

### 3.—Same—Principals—Charge of Court.

Where, upon trial of murder, the evidence failed to show that there was a conspiracy or that the defendant acted with others and aided and abetted them with any knowledge of the guilty intent, or raised the issue which authorized the court to charge on the law of principals, the court's charge on principals was reversible error. Following Marwilsky v. State, 9 Texas Crim. App., 377, and other cases.

### 4.—Same—Insufficiency of the Evidence.

Where, upon trial of murder, the evidence fails to support a conviction for that offense, the same is reversible error. Following Sanchez v. State, 70 Texas Crim. Rep., 24, 156 S. W. Rep., 218.

### 5.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, there was no evidence that defendant actually took part in the homicide, and if there was evidence that he aided or abetted others, it was wholly circumstantial, the court should have submitted the law on circumstantial evidence. Following Burnam v. State, 61 Texas Crim. Rep., 616.

### 6.—Same—Misconduct of Jury—Practice on Appeal.

Where the evidence heard upon motion for new trial on the misconduct of the jury was not filed during the term of court at which defendant was tried, the same can not be considered on appeal. Following Black v. State, 41 Texas Crim. Rep., 185.

### 7.—Same—Illegal Arrest—Manslaughter.

Where the issues of illegal arrest and manslaughter were not involved, they need not be noticed on appeal.

Appeal from the District Court of Cameron. Tried below before the Hon. W. B. Hopkins.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case

*Canales & Dancy, Graham, Jones & George,* and *E. C. Gaines,* for appellant.—On question of insufficiency of the evidence: Early v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82.

On question of misconduct of jury: Stone v. State, 79 Texas Crim. Rep., 219, 184 S. W. Rep., 193.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—This is an appeal from a conviction of murder,

appellant's punishment being assessed at fifteen years confinement in
the State penitentiary.

Appellant is a Mexican, or of Mexican descent, but long a resident
in Cameron County, Texas. His mother and brother resided on a
ranch; appellant also resided on a ranch several miles distant from
that of his mother. On the occasion of the homicide appellant is
shown to have learned that his mother was sick and to have gone to
her residence late in the evening and spent the night. At this ranch
were a brother and two grandsons of his mother and two or three
other men, besides two other women and several children. Appellant's
brother and the grandsons mentioned lived at the ranch; the others
were shown to have been there engaged in work. They were in the
habit of carrying guns attached to their saddles in riding. These guns
were left upon their saddles at night, which were kept in or near a
buggy shed or upon a mesquite tree standing by the buggy shed or·
house. Besides this buggy shed, there were the main house of three or·
four rooms, a kitchen and schoolroom and a corral, the last being so
constructed that it would obscure the view of persons approaching from
a northern direction. The ranch and improvements were situated in a
clearing in a country covered with thick growth of cactus, mesquite and
chaparral. At San Benito, a town situated some miles distant, were
stationed some United States soldiers. Some fifteen or sixteen of these
under the command of a lieutenant were ordered to go in search of
bandits who were supposed to have come into the country. On their
way they spent the night at a ranch several miles distant from that
belonging to appellant's mother. At the suggestion of the owner of
this ranch the soldiers changed their course, the ranch owner stating
to the lieutenant that the route suggested by him would take him by
the ranch owned by appellant's mother upon which there were some
horse and cattle thieves. The soldiers, accompanied by several civil-
ians, among them some civil officers, started on their journey the next
morning, August 3rd, at a very early hour. McGuire, the man for
whose murder appellant was prosecuted, was a soldier on furlough and
volunteered to accompany them. They reached the. ranch where the
homicide took place early in the morning, the civilian party going ahead
of the soldiers. The evidence shows that as the party approached the
ranch they were on horseback and galloped their horses, making a con-
siderable noise, their view of the men at the ranch being obstructed
by the corral. For the same reason the view of the approaching party
was hidden from the people at the ranch. The evidence shows that at
the time the party arrived the appellant and his mother were in the
kitchen, the latter pouring him a cup of coffee. The other men were
out working about the corral; the girl was preparing breakfast, and
the boy was feeding the hogs, and another girl had gone for water.
The party on horseback rode around the end of the corral and saw
several men run to a building fifty or sixty yards distant from the
corral, and one of the civilians holloaed: "There they are." There

was a conflict in the evidence as to whether the building to which the Mexicans went was the kitchen or the shed where the harness and sad-dles were kept, those familiar with the place testifying to the latter. The approaching party also saw one of the men with a gun in his hands and ordered him to put it down, and at that moment the firing began, and at the first shot from the ranch party the deceased, McGuire, was killed. The firing was general both from the parties at the ranch and those approaching it. The boy who had been feeding the hogs was wounded, as also was one of the civilians in the approaching party. The evidence was conflicting as to which party fired first. It is prac-tically without contradiction that the man on the ranch first seen with a gun and the first to fire from the ranch was appellant's brother and that his shot killed McGuire. He fired with a rifle. Appellant was shown by persons who were in the approaching party who knew him well not to have been one of those who ran from the corral to where the guns and saddles were and from which the shot which killed de-ceased was fired. The soldiers and party withdrew; all at the ranch left it except appellant, his mother and the wounded boy. When the civilian officers and others returned to the ranch some time after the shooting, they found appellant in the house lying down behind a box or on a box covered with some cover. They searched him and found a small amount of coin and a pocketknife and some .38 cartridges in his pocket. In the same room lying in a box was a .38 caliber pistol and scabbard. The pistol was loaded and there was no evidence that it had been fired. There was evidence that there were picked up out-side of the house where appellant was found some .38 caliber empty cartridges recently fired. The testimony was to the effect that appel-lant remained in the kitchen during the entire time of the firing, except that he and the mother of the wounded boy went out and picked the latter up after he fell. There is no dispute but that the shot fired by appellant's brother was from a different part of the premises than the place where appellant was found and where the testimony shows he remained during the time. There was no evidence that any of the parties on the ranch were bandits or law-breakers of any description. The evidence was affirmative that appellant bore the reputation of a peaceable, law-abiding man.

The court submitted the issues of murder, principals and self-defense. A request was made by special charge to instruct the jury that if ap-pellant's brother killed the deceased and in doing so acted in his own self-defense, appellant should be acquitted. "All persons are principals who are guilty of acting together in the commission of an offense." P. C., art. 74.

Other subdivisions of the chapter of our statute touching the law of principals state the conditions under which one not actually com-mitting the offense, who being present and knowing the unlawful intent aids by acts or encourages by words or gestures those engaged in the unlawful act, or who may assist in its commission, or who may procure

an irresponsible person to commit the unlawful act, or who being present advises its commission, will be guilty of the offense. P. C., arts. 75-78, inclusive.

As a predicate for a conviction of the co-principal not actually acting in a homicide case, it must be shown that there was an offense committed; that is, that there was an unlawful killing. If in this case appellant's brother in shooting the deceased acted in his own necessary self-defense, the homicide was not unlawful. There being no offense committed, the appellant being a co-principal of his brother could not under such conditions be guilty. This is a fundamental principle of the law of homicide as we understand it. It has been applied in this court in the case of McMahan v. State, 46 Texas Crim. Rep., 540; Cecil v. State, 44 Texas Crim. Rep., 450, 72 S. W. Rep., 197; Patton v. State, 62 Texas Crim. Rep., 71; Harper v. State, 35 So. Rep., 572; Blain v. State, 33 Texas Crim. Rep., 236; Benge v. Com. (Kentucky), 71 S. W. Rep., 648; Jenkins v. State, 69 Texas Crim. Rep., 585, 155 S. W. Rep., 208. In Michie on the law of homicide, p. 50, it is said that "one can not be convicted for aiding and abetting any homicide where the person actually doing the killing was justified as so doing in self-defense." And to the same effect is the text in Wharton on Homicide, 3d ed., sec. 47, p. 57, citing Bosse v. Com. (Kentucky), 16 S. W. Rep., 713; Goins v. State (Ohio), 21 N. E. Rep., 476. We think the jury should have been advised of this rule.

The court charged the jury on the law of principals as follows: "You are further instructed that all persons are principals who are guilty of acting together in the commission of an offense. When an offense is actually committed by one or more persons and others are present and knowing the unlawful intent, aid by acts, encourage by words or gestures, those actually engaged in the commission of the unlawful act, such persons so aiding or encouraging are principal offenders."

Objection was made to this charge on the ground that it was without evidence to support it. The evidence is conclusive that appellant did not shoot the deceased. The theory that any conspiracy was formed by the appellant and others which would authorize the submission of the law of principals seems to be negatived by the circumstances. There is an absence of evidence tending to show that appellant or any of the parties at the ranch at the time of the attack by the soldiers and others with them had any information that the soldiers and officers and others would come to the ranch. The evidence is undisputed that at the time the soldiers left San Benito on the evening before the homicide they had no intention to go by the place of the homicide, but, on the contrary, intended to go in another direction. This intention was abandoned and the decision reached to go by the ranch where deceased was killed in the night-time before the homicide or in the early morning when the journey to this ranch was undertaken. There is no suggestion in the evidence that appellant or those with him had any

knowledge either of the original intention mentioned or the subsequent change, but all the testimony goes to show that the first information or knowledge of the presence of the soldiers and those with them was when as they galloped into the clearing one of them exclaimed, "There they are," and demanded of appellant's brother or the man exhibiting a gun that he put down his gun. Immediately before this time the evidence shows that the persons at the ranch were pursuing their ordinary duties: appellant's mother was pouring coffee for him; one of the girls was preparing breakfast; another had gone for water; the boy who was shot had gone to feed the hogs or to milk; the men were at work about the crib and corral. The conduct of all of the parties at the ranch immediately before the arrival of the soldiers and those with them indicates that their arrival was wholly unexpected. The evidence fails to show that anyone at the ranch prior to that time was charged with any offense. There was no evidence that the soldiers or those with them had any process to serve upon appellant or those with him. There is no evidence that appellant or those with him were bandits or engaged in any unlawful pursuit. The proof shows without contradiction that appellant was a law-abiding citizen. He was not with his brother at the time when deceased was killed. He had no opportunity to aid or encourage him by words or acts, as the shooting took place immediately upon the arrival of the deceased and those with him. His mother testified without contradiction that he did not shoot, did not go to where his brother was shooting, did not leave the room in which she and he were alone until the milk boy was shot down, when he assisted his mother in picking him up. Appellant did not flee from the scene of the homicide. The evidence shows that the other Mexicans present engaged in the shooting did flee, at least did not remain at the ranch until the officers and soldiers returned, as the appellant did. The evidence while not conclusive indicated that the firing was done with rifles. The only evidence that appellant was armed at all was that there was a shotgun in the house which had not been fired, and a pistol which he was accustomed to carry, which was loaded and not shown to have been recently fired, was found in the room where appellant was hidden on the return of the soldiers and civilians. There was evidence that outside this room some empty pistol shells were found and that they had been recently fired. These were found on the ground some time after the homicide.

In the case of Renner v. State, 43 Texas Crim. Rep., 347, 65 S. W. Rep., 1102, this court discussed the rules of law applicable to principals. These are summarized in a syllabus to that case as follows:

"If two or more conspire to do an offense, and it is committed, all present are guilty as principals, and each is responsible for collateral acts growing out of the common design.

"Where there is no conspiracy to commit an offense, yet it is committed by one, and another is present, and knows the intention of the others, and by words or acts aids the persons engaged, he is guilty with

them to the extent of his knowledge, or for the reasonable consequence of the acts aided."

We think the evidence fails to show that there was a conspiracy and fails to show that appellant acted with others, aided and abetted them with any knowledge of a guilty intent; in other words, we think the evidence fails. to raise the issue authorizing the court to submit to the jury the law of principals. Marivelsky v. State, 9 Texas Crim. App., 377; Burrell v. State, 18 Texas, 713; Mitchell v. State, 36 Texas Crim. Rep., 278; Michie on Homicide, pp. 48, 49, 50, and cases cited; Rhodes v. State, 39 Texas Crim. Rep., 332; McAlester v. State, 45 Texas Crim. Rep., 258; Criner v. State, 41 Texas Crim. Rep., 290.

Appellant insists that the evidence is not sufficient to support his conviction. A substantial statement of the evidence has been made hereinbefore. We do not think it is sufficient to show appellant's guilt. Sanchez v. State, 70 Texas Crim. Rep., 24, 156 S. W. Rep., 218.

If there should be another trial on similar facts, the law of circumstantial evidence should be submitted. There is no evidence that appellant actually took part in the homicide, and if there is evidence that he aided or abetted his brother, it was wholly circumstantial. Early v. State, 50 Texas Crim. Rep., 344, 97 S. W. Rep., 82; Burnam v. State, 61 Texas Crim. Rep., 616.

Appellant's assignment with reference to the misconduct of the jury can not be considered for the reason that the evidence heard by the court thereon was not filed until after the end of the term of court at which he was tried. Black v. State, 41 Texas Crim. Rep., 185.

We do not think that the issues of illegal arrest and manslaughter were involved.

Because of the errors pointed out, the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*