ANDREW FLIX v. THE STATE.

No. 6497. Decided November 30, 1921.

**Murder—Charge of Court—Self-Defense—Acts of Co-defendant.**

Where a charge was requested on self-defense with reference to the facts in the case, that if deceased was killed by defendant's brother and the defendant's conduct made him a co-principal he would not have been guilty of an unlawful homicide if the acts and blows struck by his brother were in defense of his own life, but the exceptions to the charge were insufficient and could not be considered by this court, yet, the same principal applied, however, to the law of aggravated assault, the court at defendant's request should so have instructed the jury. Following Merka v. State, 82 Texas Crim. Rep., 568, and other cases.

Appeal from the District Court of Fort Bend. Tried below before the Honorable M. S. Munson.

Appeal from a conviction of murder; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Edward Risinger* and *C. H. Chernosky,* for appellant.—On question of court's charge on self-defense: Wood v. State, 11 S. W. Rep., 678; O'Connor v. State, 13 id., 14; Floyd v. State, 16 id., 188.

On question of refusing defendant's requested charge: Ballard v. State, 138 id., 122; Irving v. State, 150 id., 611; Red v. State, 39 Texas Crim. Rep., 667; Cook v. State, 160 S. W., 465.

*R. G. Storey*, Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The judgment condemns the appellant, Andrew Flix, to confinement in the penitentiary for a period of thirty-five years for the murder of R. C. Pool.

Appellant and his brother, James Flix, were employees of the owners of an acid plant. James, it appears, was working on the inside of the plant under the supervision of the deceased, Pool. Appellant was driving a team on the outside. Appellant is about nineteen years of age and his brother, James, about sixteen years. James was discharged by Pool, who failed or refused to issue a "time-check" upon which he could collect his pay. James reported the facts to the appellant and requested that he obtain his "time-check" from Pool. Together they went to Pool for that purpose.

From appellant's testimony, it appears that Pool ordered them out of the building, at the same time picking up a piece of iron or lead pipe in a threatening manner; that both he and his brother ran, James seizing a crowbar and the appellant a pick. James was hit by the deceased upon the arm with a pipe and knocked down, and was struggling to release himself when the appellant shoved his pick into the breast or stomach of the deceased. Then he and his brother dropped their weapons and fled from the building, pursued by the deceased and other workers therein, some of whom threw missiles, striking the appellant.

The State introduced the eyewitnesses Stafford and Johnson and a Mexican named Avila, who also testified apparently at the instance of the State.

Stafford's testimony is to the effect that appellant and his brother assaulted the deceased unaware. James hit him with an iron bar and appellant striking him with a pick, the deceased at the time having no weapon in his hand and making no demonstration.

From Johnson's testimony it appears that preceding the assault appellant and his brother and Pool were engaged in a controversy concerning the money due James for his work; that the controversy lasted only a few moments when James struck the deceased upon the head with a crowbar and appellant struck him in the stomach with the pick. At the time the blows were struck Pool was facing the appellant and his brother and had in his hand a scantling two inches thick, four inches wide and four or five feet long. This scantling was picked up by the deceased when he observed that appellant and his brother were arming themselves with a crowbar and pick. After the blows were struck, appellant and his brother fled, Pool pursuing them. The witness also pursued them and threw missiles at them, and Pool fell, face downward.

Avila testified that James was discharged for disobedience and left after asking for his money. In a short time he returned in company with the appellant. James picked up a crowbar, appellant a pick and Pool a piece of pipe. The witness could not say which acted first. They clashed and the pipe and the crowbar struck together, the pipe bending; that James hit Pool on the head with the crowbar; that he did not fall but pursued the appellant and his brother and later fell on his back.

The doctor arrived a few moments before the death of the deceased. There was a contuse or lacerated bleeding wound about two and one-half inches long on the right side of the head and a·small wound on the back of the head; also a small wound on the face and some wounds on the body. Whether there was a fracture of the skull was uncertain, though the wounds on the head probably caused the death.

The pick was described as a pick with a wooden handle. Its weight was not given nor was it otherwise described. The crowbar was about one and one-half inches round, sharp at one end. Neither its weight nor length is disclosed.

The law of principals was given in the charge to the jury, and they were instructed upon manslaughter and self-defense. As embodied in the main charge, the law of self-defense was confined to the right of appellant to protect his brother, and in a special charge, however, there was embodied an instruction upon his right to defend himself. Another phase of the law of self-defense was called for by the facts, that is, if the deceased was killed by James Flix and not by appellant, but the appellant's conduct made him a co-principal with James Flix, appellant would not have been guilty of an unlawful homicide if the act and blows struck by James Flix were in defense of his own life. McMahon v. State, 46 Texas Crim. Rep., 540, and other cases cited in Pizana v. State, 81 Texas Crim. Rep., 85.

We do not regard the exceptions to the charge, however, sufficiently specific to bring this omission up for review. The same principle applies, however, to the law of aggravated assault. The court, at appellant's request, instructed the jury that if appellant struck and killed the deceased, not in defense of himself or his brother, and the weapon used by him was not a deadly weapon, his offense would be an aggravated assault. The propriety of giving this charge, we think, is not open to question. Under the evidence the pick which the appellant used was not *per se* a deadly weapon, and whether in its use death was designed was a question of fact. Penal Code, art. 1147; Branch's Texas Crim. Statutes, vol. 1, page 716; Merka v. State, 82 Texas Crim. Rep., 568. The same is true with reference to the weapon used and the intent of James Flix. In bill of exceptions No. 5 complaint is made of the refusal of the court to give a special instruction to the effect that if, in striking the deceased with the weapon used, there was no intent upon the part of James Flix to kill the deceased, appellant's

guilt would not be more than aggravated assault. This special charge is not altogether accurate, but it is sufficiently so, in our judgment, to pertinently direct the attention of the court to the fact that the jury had not been instructed in connection with the law of principals if James Flix killed the deceased without an intention to do so and the weapon used was not a deadly weapon; and that his offense was only aggravated assault, and that appellant's culpability grew out of the aid and encouragement he gave to the principal actor, James Flix, then his offense would likewise be aggravated assault. In our opinion, the refusal to so instruct the jury was a harmful error. It is evident from the testimony that the death of the deceased was due to blows which James Flix inflicted in striking him with the crowbar and not to the use by the appellant of the pick. In view of Article 1147 of the stat· ute, the jury, upon a proper charge, might have determined that James Flix was not using a deadly weapon and that he had no intent to kill the deceased. If they made such a finding, it would follow that appellant, in aiding and encouraging James Flix to · commit the offense of aggravated assault, would not thereby be guilty of murder.

Because of the error mentioned the judgment is reversed, and the cause remanded.

*Reversed and remanded.*