CHARLIE LEE V. THE STATE.

No. 24142. November 10, 1948.

Hon. E. Harold Beck, Judge Presiding.

*Connor Patman, Norman Russell* and *Robert L. Dalby,* all of Texarkana, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of 99 years.

The record reflects that Andrew Hill, S. T. Hubbard, Joe Johnson, and appellant were jointly indicted for the murder of R. F. Talley. A severance was granted and the defendants agreed upon the order in which they were to be tried. It was agreed that Andrew Hill be tried first, Joe Johnson next, and then appellant. When the case of the State against Joe Johnson was called for trial, the state moved to dismiss the case against him. The motion was sustained, the case was dismissed, and then appellant was placed on trial, found guilty, and his punishment was assessed as above stated. Appellant challenges the sufficiency of the evidence to sustain his conviction.

The facts necessary for an understanding of the law of this

case are substantially as follows: On Saturday night, November 8, 1947, R. F. Talley and W. C. Shipp, a deputy constable of Precint No. 6 in and for Bowie County, were riding around over the precinct when they noticed an automobile on the highway without a tail light. They stopped the automobile which was occupied by several negroes and told the driver that he would have to get some lights. He promised to do so at the next filling station which was a short distance ahead. While the constable was talking to these negroes another automobile came along the highway and stopped some 75 or 100 feet in front of the officers' car. This second car was also occupied by negroes, who got out and came down to the other car to ascertain the trouble, if any.

The constable inquired of Fletcher Davis, the driver of the second car, if he had a driver's license to which Davis replied that he had a permit which, however, proved to be a permit issued to him in the State of California. The officer started to take him to the office of the justice of the peace in Mr. Talley's automobile, whereupon, Davis inquired if they were going to leave his automobile parked on the highway and have someone strip his car of tires, etc. The constable suggested to Davis that they go in his, Davis', car. They did this and then Mr. Talley inquired of the other parties if they desired to go to the office of the justice of the peace. If so, they may get into his car and he would carry them there. It appears from the record that Andrew Hill and S. T. Hubbard got in the front seat with Mr. Talley and the defendant and Joe Johnson got in the rear seat. Before Mr. Talley started his car, Andrew Hill, who was sitting next to Mr. Talley on the front seat, grabbed Mr. Talley's pistol and shot him in the abdomen. When the first shot was fired, appellant, Joe Johnson, and S. T. Hubbard jumped out of the car and ran a short distance from the car, then Andrew Hill fired the second shot which struck Talley in the head. After the second shot had been fired, Andrew Hill came to where the other negroes were with a pistol which later proved to be Mr. Talley's. They then left the scene of the difficulty and went home. Later in the night Mr. Talley was discovered sitting in his car mortally wounded. He was carried to a hospital where he died something like twenty-four hours later. All four of the negroes were arrested the next morning and placed in jail.

It was the state's contention that appellant was a principal in the killing of Talley on the theory that he held the deceased while Andrew Hill took the pistol from Talley. Our statute provides that all persons are principals who are guilty of acting

together in the commission of an offense; that when an offense is actually committed by one or more persons, but others are present and, knowing the illegal intent, aid by acts or encourage by words or gestures those actually engaged in the commission of the unlawful act, or who not being actually present, keep watch so as to prevent interruption of those engaged in committing the offense, such person so aiding, encouraging, or keeping watch are principal offenders and may be prosecuted and convicted as such. See Arts. 74 and 75, Vernon's Ann. P. C.

Now, applying the law to the facts as we have stated them herein, do they show with sufficient certainty that appellant is guilty of murder? When it is sought to hold one amenable as a principal to some other person who actually committed the unlawful act, not only is it necessary to show his presence but it must further be shown that he knew of the unlawful intent of the party about to commit the same and, knowing the unlawful intent, he aided him by acts or encouraged him by words or gestures to commit the same. Sam Hill testified that after they left the scene of the crime and were on their way home, Andrew Hill asked who held him and he, the witness, heard some one in the rear of the car remark, "I did," that he thought it was appellant's voice, but he was not sure. The record fails to show any previous agreement among the negroes to commit any offense, nor does it show any ill will towards the deceased by appellant or his companions, nor were they, or either of them, under arrest, and therefore could not have sought, by force, to extricate themselves from restraint. On the contrary, the deceased invited them into his car and offered to take them to the office of the justice of the peace where Mr. Shipp, the constable, had taken Fletcher Davis.

The record is silent as to why Andrew Hill desired to disarm the deceased, but whatever his purpose was in attempting to do so, unless appellant knew of the intent on the part of Andrew Hill, other than to disarm the deceased, would he be guilty of murder as a principal? We do not think so. Therefore, knowledge of the intent of Hill to kill the deceased is a necessary element to constitute him a principal. This, however, may be established either by direct or circumstantial evidence from which knowledge of the intent may be inferred. In the instant case, there is no direct or circumstantial evidence which would justify the conclusion that appellant had any knowledge that Hill had any intent other than to disarm the deceased. The entire transaction occurred within a few seconds after the negroes had entered the automobile of the deceased and before

the motor was set in motion. No agreement is shown nor a word passed between appellant and Hill before or at the time of the unfortunate killing. If Hill, after he had obtained possession of the pistol, on an independent impulse killed the deceased, appellant would not be guilty of murder as a principal. We think that the case of Walker v. State, 29 Tex. App. 621 (16 S. W. 548), by analogy, sustains the opinion here expressed. See also Renner v. State, 43 Tex. Cr. R. 347 (65 S. W. 1102); and Lyons v. State, 30 Tex. App. 642 (18 S. W. 416).

In order to reach the conclusion that Andrew Hill intended to kill the deceased and that appellant knew of such intent when he held the deceased, we must assume that Hill not only intended to disarm the deceased but intended to kill him, and then we must assume that appellant had knowledge thereof. This would be tantamount to basing one inference upon another inference in order to reach a conclusion. This cannot be done under the rule of evidence.

Having reached the conclusion that the evidence is insufficient to sustain the conviction of appellant for murder as a principal, it is not necessary to discuss any of the other questions presented by appellant. From what we have said it follows that the judgment of the trial court should be reversed, and it is so ordered.

Opinion approved by the Court.