# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00557-CR

**Chandell Allen, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. 3040396, HONORABLE FRED A. MOORE, JUDGE PRESIDING

### O P I N I O N

Appellant Chandell Allen[1] appeals her conviction for possession of a controlled substance, to wit: cocaine in the amount of more than 200 grams but less than 400 grams. *See* Tex. Health & Safety Code Ann. § 481.115(a), (e) (West 2003). After the jury found appellant guilty, appellant with the State's consent, requested that the trial court assess punishment. Pleading "true" to the enhancement of punishment allegations of a prior conviction for robbery, appellant was sentenced to fifteen years' imprisonment by the trial court. *See* Tex. Penal Code Ann. § 12.42(c)(1) (West Supp. 2007).

---

[1] The cause is styled in accordance with the trial court's judgment. The indictment alleged appellant's name as "Channdell Lofton Allen." There was no suggestion of a change of name. Without further clarification, appellant testified at trial that her name was "Chandell Monique Allen Lofton. Trial exhibits reflect appellant's prior conviction in the name of "Channdell Lofton." The court reporter's record spells appellant's given name as "Chandell" as do the briefs and other filed documents.

**POINTS OF ERROR**

Appellant advances three points of error. Initially, she challenges the legal sufficiency of the evidence to sustain the conviction. Second, she urges that the evidence is factually insufficient to support the jury's verdict. Third, appellant claims that the insufficient evidence shows her mere presence at the apartment where the contraband was found. This contention is, of course, included in the first two points. We will sustain the appellant's first point and order an acquittal.

**BACKGROUND**

On December 4, 2004, Austin Police Officers executed a search warrant at the two-story apartment of Joe Houston at 1310 Southpoint Street, #C in Austin. Approximately eight men in black attire made a "no knock or announce" entry into the apartment at about 5:30 p.m. These men were the "entry team," and were followed by another eight men led by Officer Leslie Kyle to supervise the search. Prior to the search, Austin Police Officer Bart Gatlin began surveillance of Houston's apartment. Officer Gatlin testified that his surveillance began at about 4:30 p.m. on December 4, 2003, and lasted for thirty to sixty minutes. He saw appellant come out of the apartment and return on one occasion.[2] He saw a white woman and an older black man come separately to the apartment and then leave in a few minutes. He did not know these individuals or whether they lived in the neighborhood. He could not remember their clothing and did not detain them. Officer Gatlin did state that the foot traffic of two individuals could be indicative of narcotic activity.

---

[2] Officer Gatlin had been furnished a booking picture of appellant. He did not know her.

When Officer Kyle and his officers entered the apartment, they found appellant seated on a couch in the living room with two small children, her daughter, Miracle, about five or six months old, and Jada Houston, about eighteen months old. Kyle found a "hot" marihuana roach on the couch which had recently been smoked. The record reflects that there were two diaper bags. In the one belonging to appellant, Officer Kyle found a razor blade. In the search of the house, a ceramic plate or platter was found on the back of the top of the kitchen refrigerator behind a cereal box and a bag of corn chips. On the platter were small baggies of powdered cocaine, several rocks of crack cocaine, a razor blade and a plastic knife. The residue scraped from the platter and utensils, also on the platter were later shown to weigh 0.03 grams of cocaine. The other cocaine weighed 6.82 grams. The 6' 1" tall Kyle stated the "plate" was in "plain view." He did not say the cocaine was in plain view.

Police officers found in a closed cabinet under the kitchen sink, a Pyrex jar containing a 12.64 gram "cookie" of crack cocaine. Near the jar was a sifter (strainer) and a fork with 0.68 grams of cocaine residue attached thereto. A digital electronic scale was also found in that cabinet. In another closed cabinet above the kitchen counter was found a stack of seven "cookies" of crack cocaine shown to weigh 94.57 grams. In a closed dog food bag, in the dining area near the kitchen, was found 134.28 grams of powdered cocaine. On a bar separating the living room and kitchen was another razor blade.

A search of the second floor of the apartment revealed two bedrooms. One contained a man's clothing and personal items. The other contained the clothes and belongings of a child. Nothing belonging to appellant was found on the second floor. Officer Kyle testified that paychecks

3

and other personal papers seized all belonged to Joe Houston. The officer stated that no evidence was uncovered during the search to indicate that appellant lived there.

No cocaine was found on appellant's person. Officer Kyle stated that he did not observe any outward indications that appellant had been using cocaine. She was not agitated or hyper from such use. She had no powder residue on her clothes. She did not have a runny nose, had no burn marks on her fingers from smoking cocaine, and there was no aroma of recently burned cocaine in the apartment. No crack pipes, snorting tools, or needles, all typical drug user paraphernalia, were found. The evidence does not reflect that any cash or firearms were located.

Officer Kyle testified that appellant did not try to flee from the premises or attempt to hide any items. He described her as being cooperative with the police. Appellant made no incriminating statements. Officer Kyle did observe that the premises smelled of marihuana, but concluded that the smell came from the recently burned marihuana roach. At the conclusion of the search, appellant was released. She was not arrested.[3]

Latent fingerprints were recovered from some of the objects seized: the ceramic platter from the top of the refrigerator, the scale and its battery, and a Pyrex jar measuring cup. According to Dennis Degler, the fingerprint examiner for the Austin Police Department, appellant's known fingerprints (State's exhibit No. 26) matched the right thumb and left middle fingerprints

---

[3] During the search, Joe Houston's mother, who lived nearby, came to the apartment out of her concern for her grandchild. She was admitted. The record reveals that an unidentified Hispanic woman also came to the apartment. She was in possession of marihuana and departed after being given a citation.

lifted from the ceramic platter. (State's exhibits No. 22 & 23).[4] Joe Houston's fingerprints were also found on the platter, and on the digital scale and the scale's battery. Appellant's fingerprints were not found and identified except on the underside of the ceramic platter. Degler testified that fingerprints could be lifted a year or longer after being made depending on environmental facts.

Chemist Glenn Harlison testified that the controlled substances seized were submitted to him, were analyzed and found by him to be 252.78 grams of cocaine. He related that he tested twenty of the crack cocaine racks found in a kitchen cabinet (State's exhibit No. 15), but not all the rocks.[5] Appellant's counsel stated, "No objection," when the State introduced into evidence the search warrant affidavit, the search warrant, and the return thereon. The affidavit alleged that the premises in question were controlled by Joe Houston, in whose name the utilities were registered; that Houston was on parole for convictions for narcotic-related offenses and had recently purchased a shotgun; that a confidential informant, who had given reliable information in the past, had been in Houston's apartment within the last seventy-two hours and had seen a distributable amount of cocaine there; and that Joe Houston was selling cocaine from the apartment.

The affiant, Detective Jeff White, stated his belief that Houston was knowingly in possession of cocaine and alleged that the apartment contained cocaine, firearms, U.S. currency, and

---

[4] Earlier on direct examination, Dennis Degler testifed that appellant's known fingerprints matched the fingerprints lifted from the platter "both made by the same fingers, the same hand" of appellant.

[5] Appellant expresses some concern about this matter. The random sampling of apparently homogeneous substances contained within a single receptacle is sufficient to prove the whole is contraband. *Melton v. State*, 120 S.W.3d 339, 342 n.7 (Tex. Crim. App. 2003); *Zone v. State*, 118 S.W.3d 776, 777 (Tex. Crim. App. 2003).

tally sheets related to the sale of cocaine. The search warrant affidavit made no mention of appellant or any other woman.

The search warrant reflected that the magistrate found probable cause and issued the warrant. The execution or return and inventory dated December 5, 2003, reflected that the search occurred on December 4, 2003.[6]

Before resting its case-in-chief, the State played for the jury a videotape of the search itself. The tape consisted principally of an interview with appellant while she tried to handle two small children who were moving about. Appellant was not arrested for possession and was permitted to leave Houston's apartment.

The twenty-seven-year-old appellant testified in her own behalf. Appellant admitted that she had been placed on probation for robbery in 1996, had her probation revoked in 1999, had been released from prison in 2001, and that her parole was terminated in February 2002. At the time of the search, she lived at 2007 New York Avenue in Austin, and received food stamps and child support from the father of her four children.

Appellant related that in October 2003, she was introduced to Joe Houston at his mother's house by "Daryl, her children's uncle." She testified that Houston began to bring his daughter, Jada, to her house on Blessing Avenue on his way to work at a car wash, and would pick the child up in the evenings. He paid appellant for the baby sitting. Appellant testified that Houston

_____

[6] Interestingly, the search warrant affidavit appears to have been sworn to before a magistrate by Detective Jeff White on December 4 "at 11:55 p.m." which would have been after the search at Joe Houston's apartment. The search warrant itself reflects issuance on December 4, 2003, "at 11:55 _m." No issue was raised concerning this matter by appellant's counsel.

6

moved from his mother's place to 1310 Southpoint, #C about November 1, 2003, which coincided with her own move to 2007 New York Avenue. Houston continued to bring Jada to her to baby sit. Appellant acknowledged that after Houston's move, she had taken groceries to his apartment on one occasion, and some pots on another because he did not have such utensils.

Appellant stated that on the morning of December 3, 2003, Houston telephoned her and asked her to pick up Jada because he was running late. She went alone in a taxi cab to Houston's apartment, arriving at about 8:30 a.m. A man named "Junior," whom she did not know, gave her the keys to the apartment and left. Jada was still eating her cereal, so appellant washed some dishes, got Jada's things, and took the child to appellant's home on New York Avenue. The next morning, December 4, 2003, Houston telephoned appellant again with the same excuse. Appellant indicated that "this had to stop." Appellant took her infant, Miracle, and went in a taxi cab to Houston's apartment. As a result of the delay in obtaining a taxi, appellant did not arrive until some time between 11:30 a.m. and noon. Jada was not there.[7] Appellant stated that Jada was brought to the apartment at about 2:30 p.m. by her grandfather. Appellant intended to take the child to her home and needed to be home by 3:30 or 4:00 p.m. Appellant believed it was near 4:00 p.m. when the search occurred, rather than 5:30 p.m.

Appellant stated that she was on her way to the bathroom when the first group of officers in black uniforms entered the house, forced her to the floor, and put a gun to her head. Eventually, they allowed her to sit on the couch in the living room with the two infants.

---

[7] It is not altogether clear, but it appears Jada was with her grandfather at the time.

7

Appellant admitted that she had a marihuana roach in her cigarette pack, but denied that she had been smoking it. She did not know how a razor blade got into the pocket of her child's diaper bag.[8]

Appellant denied ever having seen any of the cocaine found by the officers on the back of the top of the refrigerator,[9] under the kitchen sink, in a kitchen cabinet, and buried in a dog food bag. She stated that she had never used cocaine and was not under the influence of "anything." When the officers arrived, appellant denied having any connection with any of the cocaine found. She had no idea any cocaine was hidden in the apartment. Although she had since been told, appellant stated that at the time, she did not know what the digital scale was when found by the police officers. She denied selling any cocaine. She said that two individuals separately came to the apartment shortly before the search and asked for Joe Houston. When told that he was not there, they left.

Appellant related that she answered all the questions the police officers asked and tried to cooperate. Appellant testified that at the conclusion of the search, the officers told her that she was not under arrest, and that she and her child were free to go. On March 3, 2004, almost three months later, appellant was arrested at her home on New York Avenue.

---

[8] No residue was found on this razor blade. Whether it was a single or double-edged blade was not revealed. Appellant stated that she used a razor blade to cut her eyebrows at home. She explained that she had a change of her clothing in the diaper bag in case one of the children spit up on her or dropped food on her dress. She had no occasion, however, to change clothes that day.

[9] Appellant stated that she was 5' 6" tall. The defense theory was that whatever the 6' 1" tall Officer Kyle could see behind the cereal box and corn chips at the back of the top of the refrigerator was not visible to appellant. Moreover, Officer Kyle stated that he knew where to look. The search warrant affidavit reflects that Kyle had received information from a confidential informant.

In rebuttal, the State recalled Officer Kyle, who testified that "about" a week before the search, he set up a surveillance of Houston's apartment in the "evening time." Officer Kyle related that as he arrived on the scene, Houston left the apartment. Other officers followed Houston. Officer Kyle kept the apartment under surveillance for an hour. He stated that about seven or eight people came to the apartment and left, that appellant had answered the door, and he considered this "narcotic foot traffic." On cross-examination, Officer Kyle could not recall the date of the surveillance, admitted that he filed no police report, and that he did not detain, identify, or recognize any of the individuals coming to the house. The record does not reflect the time of Officer Kyle's November-evening surveillance or his location in relation to the apartment, or the lighting conditions. Officer Kyle stated that he recognized appellant from a booking photograph.

Officer Kyle also testified on rebuttal that on March 3, 2004, he and other officers arrested appellant at her home on New York Avenue for the instant offense, which occurred almost three months earlier. As the officers approached, Officer Kyle saw appellant standing in the doorway of her house with a cell phone. He said appellant then ran inside her house. As the officers entered the house, Officer Kyle heard the sound of a flushing toilet. There was an adult male (not Houston) and some children in the house. Appellant was taken into custody pursuant to an arrest warrant.

## TRIAL PROCEDURE

After both sides closed, appellant's motion for an instructed verdict was overruled. The trial court also overruled appellant's objections to the inclusion of a lesser-included offense (possession of more than four grams but less than 200 grams of cocaine) instruction in the jury charge. The trial court's charge submitted the first-degree felony as alleged in the indictment, as well

9

as the lesser-included offense. While the court's charge mentioned that a controlled substance could be jointly possessed, there was no charge on the law of parties. *See id*. § 7.02(a)(2) (West 2003). In submitting the first-degree felony as alleged, the trial court required the jury to find beyond a reasonable doubt that appellant was a primary actor in possessing more than 200 grams of cocaine before it could convict her of the offense charged.

## STANDARD OF REVIEW

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires every state criminal conviction to be supported by evidence that a rational trier of fact could accept as sufficient to prove all the elements of the offense charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993); *see also* Tex. Penal Code Ann. § 2.01 (West 2003); *Ward v. State*, 143 S.W.3d 271, 274 (Tex. App.—Waco 2004, pet. ref'd). Under the Fourteenth Amendment, the task of the appellate court is to consider all the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); *Cardenas v. State*, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000). Reviewing courts are not fact finders. Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). "If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal." *Fisher*, 851 S.W.2d

10

at 302 (quoting *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The legal sufficiency of the evidence under the *Jackson* standard is a question of law. *See Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); *Roberson v. State*, 16 S.W.3d 156, 165 (Tex. App.—Austin 2000, pet. ref'd).

In assaying all the evidence under the *Jackson* standard of review, an appellate court must consider all evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Guevara*, 152 S.W.3d at 49; *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987); *Roberson*, 16 S.W.3d at 164. In analyzing a challenge to the legal sufficiency of the evidence, a reviewing court does not realign, disregard, or weigh the evidence. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given the testimony and may accept or reject all or any of a witness's testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or

unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846; *Ware v. State*, 62 S.W.3d 344, 349 (Tex. App.—Fort Worth 2001, pet. ref'd).

The first paragraph of the instant indictment (primary offense) alleged in pertinent part that on or about December 4, 2003, appellant "did then and there intentionally and knowingly possess a controlled substance, namely cocaine, in an amount of 200 grams or more but less than 400 grams by aggregate weight including any adulterants and dilutants.[10]

Under this indictment, in order to secure a first-degree felony conviction, the State had to prove beyond a reasonable doubt that appellant (1) intentionally or knowingly, (2) possessed cocaine, and (3) in an amount of more than 200 grams but less than 400 grams. It is this third element that results in the felony being one of the first degree. *See* Tex. Health & Safety Code Ann. § 481.115(a), (e).

### APPLICABLE LAW

While the instant case was prosecuted under the health and safety code, the penal code's general principles of criminal responsibility are applicable through penal code subsection 1.03(b). *See* Tex. Penal Code Ann. § 1.03(b) (West 2003). Subsection 1.03(b) states that the provisions of titles 1, 2, and 3 of the penal code apply to offenses defined by other laws—outside of the penal code—unless provided otherwise by the statute defining the offense. *Id*. The criminal responsibility principles are found in title 2, chapter 6 of the Texas Penal Code. *Id*. §§ 6.01-.04 (West 2003 & Supp. 2007).

---

[10] Paragraph II of the indictment alleged a prior conviction for robbery for the enhancement of punishment.

Subsection 6.01(a) is also applicable and provides that a person commits an offense only if he voluntarily engages in conduct including an act, an omission, or possession. *Id*. § 6.01(a) (West 2003). Possession is a voluntary act if the possessor obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *See id*. § 6.01(b) (West 2003); *Watson v. State*, 752 S.W.2d 217, 221 (Tex. App.—San Antonio 1988, pet. ref'd).

Not only must a person voluntarily engage in conduct, a person does not commit an offense (except for certain strict-liability offenses) unless he or she engages in the proscribed conduct with the culpable mental state that the definition of the offense requires. *See* Tex. Penal Code Ann. § 6.02(a) (West Supp. 2007); *Moss v. State*, 850 S.W.2d 788, 795 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (evidence must show that defendant committed voluntary act with requisite culpable mental state).

Where the offense is the possession of a controlled substance, the proscribed conduct is possession. *See* Tex. Health & Safety Code Ann. § 481.115(a). "Possession means the actual care, custody, control, and management." *Id*. § 481.002(38) (West Supp. 2007); Tex. Penal Code Ann. § 1.07(a)(39) (West Supp. 2007).[11]

As noted, we review the legal sufficiency issue as we do in all cases. After viewing all the evidence in the light most favorable to the verdict, it must be determined whether any rational

---

[11] The same definition appears in both codes. The penal code definition is applicable to prosecutions under chapter 481 of the health and safety code. *See* Tex. Health & Safety Code Ann. §§ 481.001-.314 (West 2003 & Supp. 2007) (Texas Controlled Substances Act); Tex. Penal Code Ann. § 1.03(b) (West 2003); *Garcia v. State*, 790 S.W.2d 22, 24 (Tex. App.—San Antonio 1990), *aff'd*, 840 S.W.2d 957 (Tex. Crim. App. 1992) (permanently abated on appellant's death).

trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *See Sanders*, 119 S.W.3d at 820.

Possession of contraband need not be exclusive and evidence which shows that an accused jointly possessed the contraband with another is sufficient. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd). The State's theory here was that appellant was in joint possession of all the cocaine found.

In addition to the third element of the offense (amount of cocaine), two essential evidentiary requirements must be met in this case. First, the State must prove that appellant exercised custody and control over the cocaine, and second, it must prove that she had knowledge that the substance in her possession was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martin*, 753 S.W.2d at 387; *Lassaint v. State*, 79 S.W.3d 736, 739 (Tex. App.—Corpus Christi 2002, no pet.).

When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of contraband. *Poindexter*, 153 S.W.3d at 406; *Brown*, 911 S.W.2d at 748; *Hargrove v. State*, 211 S.W.3d 379, 385 (Tex. App.—San Antonio 2006, pet. ref'd); *Caldwell v. State*, 686 S.W.2d 363, 365 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Even custody and control of the residence where the contraband is found are not dispositive of knowledge of any narcotic located in the residence, *United States v. Rojas-Alvarez*, 451 F.3d 320, 334 (5th Cir. 2006); *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993), nor is it synonymous with control of the contraband found therein. *Meyers v. State*, 665 S.W.2d 590, 595 (Tex. App.—Corpus Christi 1984, pet. ref'd).

Similarly, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional independent facts and circumstances must link the accused to the knowing possession of the contraband. *Willis v. State*, 192 S.W.3d 585, 593 (Tex. App.—Tyler 2006, pet. ref'd); *Lassaint*, 79 S.W.3d at 740; *see also Grantham v. State*, 116 S.W.3d 136, 143 (Tex. App.—Tyler 2003, pet. ref'd); *Jenkins v. State*, 76 S.W.3d 709, 712 (Tex. App.—Corpus Christi 2002, pet. ref'd).

Whether the evidence be direct or circumstantial, "it must establish to the requisite level of confidence that the accused's connection with the contraband was more than just fortuitous. *Brown*, 911 S.W.2d at 747.

In determining the legal sufficiency of evidence in a knowing possession of contraband case, it is often said that in addition to mere presence, there must be evidence of circumstances to adequately justify the conclusion that the accused knowingly possessed the contraband. *See, e.g.*, *Evans v. State*, 202 S.W.3d 158, 162 n.9 (Tex. Crim. App. 2006); *Washington v. State*, 215 S.W.3d 551, 554-55 (Tex. App.—Texarkana 2007, no pet.). Mere presence, however, even when coupled with other facts, may not be sufficient to support a conviction.

Mere presence at the location where the contraband is found is insufficient by itself to establish possession of contraband. *Evans*, 202 S.W.3d at 162; *Martin*, 753 S.W.2d at 387; *Meeks*

15

*v. State*, 692 S.W.2d 504, 511 (Tex. Crim. App. 1985). It is not sufficient to show that the accused was merely present, near, or in the vicinity of the contraband. *Batiste v. State*, 217 S.W.3d 74, 80 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex. App.—San Antonio 1995, no pet.); *Vargas v. State*, 883 S.W.2d 256, 262 (Tex. App.—Corpus Christi 1994, pet. ref'd). Mere presence in the vicinity of the contraband or where contraband is being used or possessed by others does not, by itself, support a finding that a person is a joint possessor or a party to the offense. *Harvey v. State*, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972); *Garcia v. State*, 218 S.W.3d 756, 763 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Martin*, 753 S.W.2d at 387).

Along the same line, mere presence does not make an accused a party to joint possession even if the accused knows of the existence of the contraband and has knowledge of an offense. *See Oaks v. State*, 642 S.W.2d 171, 177 (Tex. Crim. App. 1982) (possession means more than being where the action is); *Lassaint*, 79 S.W.3d at 746; *Winter v. State*, 725 S.W.2d 728, 730-31 (Tex. App.—Houston [14th Dist.] 1986, no pet.). However, presence and proximity when combined with other evidence, direct or circumstantial, may be sufficient to establish a knowing possession of contraband. *See Evans*, 202 S.W.3d at 162.

The record in the instant case shows that appellant was not in exclusive possession of Houston's apartment where the cocaine was found by the police. Houston and his daughter, Jada, lived there. Appellant lived elsewhere and was at the apartment for a few hours on December 4, 2003, as a baby sitter. A "Junior," Jada's grandfather, and the confidential informant had all been in Houston's apartment within days of the search. Moreover, no cocaine was found on appellant's

16

person and no cocaine residue was present on her clothes. For these reasons, the State had the

burden to show additional independent facts and circumstances to link appellant to the contraband

in order to raise a reasonable inference of appellant's knowledge and control of the contraband.

*Poindexter*, 153 S.W.3d at 406; *Hargrove*, 211 S.W.3d at 385.

To sustain its burden, the State relies upon the thirty-six year old "affirmative links"

doctrine, although since the filing of this cause on appeal, the doctrine may well be in a transitional

status or at a crossroads in our state criminal justice system. *See Evans*, 202 S.W.3d at 161-62 n.9.

The doctrine has been shorn of part of its name, *id*., but appears still functional and not completely

abandoned.[12]

---

[12] In *Evans v. State*, Judge Womack, joined by two other judges, concurred in the reversal of the conviction and remand of the cause, but expressed his preference that the term "affirmative link" not be used by the Texas Court of Criminal Appeals and explained his reasons. 202 S.W.3d 158, 166 (Tex. Crim. App. 2006) ("The evidence doesn't have to be any more affirmative or linking than circumstantial evidence in any other case."). Responding, the majority agreed that in the future, the court will use only "link" rather than "affirmative link" "so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id*. at 161-62 n.9.

The *Evans* majority used the "link" analysis in reaching its conclusion. In doing so, the court, somewhat confusedly, used the term "link" instead of "factor" as used previously. *Id*. at 163-64; *cf. Poindexter v. State*, 153 S.W.3d 402, 409-12 (Tex. Crim. App. 2005). Whether this switch in terminology portends further change is unclear.

In a post-*Evans* decision, the court stated:

> In other words, we ask if there is evidence of circumstances in addition to mere presence that adequately justifies the conclusion that the defendant knowingly possessed the substance.

*Washington v. State*, 215 S.W.3d 551, 554-55 (Tex. App.—Texarkana 2007, no pet.) (citing *Evans*, 202 S.W.3d at 162 n.9).

The instant case was tried and briefed under the well-established affirmative link

doctrine.[13]  The State relies specifically upon certain factors as constituting an affirmative link

---

[13]  The rise and development of the Texas affirmative link doctrine and related matters are discussed in *Brown v. State*, 911 S.W.2d 744, 745-49 (Tex. Crim. App. 1995); *see also Castellano v. State*, 810 S.W.2d 800, 805-06 (Tex. App.—Austin 1991, no pet.).  The phrase "affirmative link" appeared apparently for the first time in *Haynes v. State*, 475 S.W.2d 739, 742 (Tex. Crim. App. 1971).  The cases cited in *Haynes* did not use the phrase.  *Haynes* was followed by *Payne v. State*, 480 S.W.2d 732, 734 (Tex. Crim. App. 1972), and a host of other contraband possession cases using the term and requiring an "affirmative link."  Texas courts have developed by case law a non-exclusive list of factors to determine whether the evidence is sufficient to affirmatively link the accused with the knowing possession of a controlled substance.

The number and types of factors listed may vary from case to case.  *See, e.g.*, *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (fourteen factors listed); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.) (seventeen factors); *Nixon v. State*, 928 S.W. 212, 215 (Tex. App.—Beaumont 1996, no pet.) (twelve factors).

In *Evans*, the court listed the factors set out in *Olivarez*, but added:

These are simply some of the factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing possession [of contraband].  They are not a litmus test.

202 S.W.3d at 162 n.12.

Some of the factors listed in various cases as possibly contributing to an affirmative link are more appropriate in cases where the contraband is found in a motor vehicle rather than in a house or apartment.  A factor that contributes to the sufficiency of evidence that a defendant possessed contraband in one case may be of little or no value in a different case.  *Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (citing *Roberson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)).

There is no established or set formula of factors that would dictate a finding of an affirmative link to support a reasonable inference of knowing possession of contraband.  *State v. Provost*, 205 S.W.3d 561, 568 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2005, no pet.); *Bethancourt-Rosales v. State*, 50 S.W.3d 650, 656 (Tex. App.—Waco 2001, pet. ref'd).

The number of factors is not as important as the logical force those factors have in establishing the elements of the offense. *Lassaint*, 73 S.W.3d at 741; *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Seldom will any one factor have logical force sufficient to sustain a conviction based on constructive possession of contraband. *Trejo v. State*, 766 S.W.2d 381, 385 (Tex. App.—Austin 1989, no pet.); *see also Castillo v. State*, 867 S.W.2d 817, 820 (Tex. App.—Dallas 1993) (one factor does not support finding of affirmative link); *vacated and remanded on other grounds*, 913 S.W.2d 529 (Tex. Crim. App. 1995). An affirmative link customarily emerges from an orchestration of several of the listed factors and the logical force they have in combination. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd).

An affirmative link may be proven by circumstantial evidence, however, the proof must generate more than a strong suspicion or mere probability of guilt. *Grant v. State*, 989 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The evidence must establish that an accused's connection with the contraband was more than fortuitous. *Evans*, 202 S.W.2d at 161. Courts must avoid cobbling or stapling together several factors without logical force and then proclaim a sufficient "link" between the accused and the contraband.

It has been held that the affirmative link doctrine provides a logical, sound method of applying the *Jackson* standard of reasonable doubt in legal sufficiency situations. *Hall*, 86 S.W.3d at 240; *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.); *Martinets v. State*, 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.).

Only recently the Court of Criminal Appeals pointed out that affirmative link "rule" protects the innocent bystander. In *Poindexter*, the court wrote:

> The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense notion that a person—such as father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house.

153 S.W.3d at 406.

It must be remembered that the affirmative link doctrine is a judicially devised standard to aid appellate courts in determining the legal sufficiency of evidence in knowing possession of contraband cases. The parties are not entitled to a jury charge in the trial court on the affirmative links doctrine. *Deener v. State*, 214 S.W.3d 522, 529-30 (Tex. App.—Dallas 2006, pet. ref'd) (citing *Brown v. State*, 122 S.W.3d 794, 799-800 (Tex. Crim. App. 2003) (improper comment on

19

between appellant and the contraband to support the conviction. In our analysis, we shall examine and evaluate these factors in the light of new "link" doctrine and, of course, in accordance with the legal sufficiency standard of *Jackson* as in all other cases. *See Evans*, 202 S.W.3d at 161.

In applying our sufficiency review, we shall first discuss the places where the cocaine was found.

**THE DOG FOOD BAG**

The lion's share of the cocaine (134.28 grams) was discovered in a plastic bag within a closed dog food bag in the dining room. Officer Clark had to empty the entire dog food bag into a bucket before finding the plastic bag of cocaine. The dog food bag was visible, but the cocaine found was not visible to the naked eye. Appellant was in the living room on a couch and there is no showing of plain view of the contraband. Without question, the contraband was secreted. The

---

weight of evidence)); *Gilbert*, 874 S.W.2d at 297; *Davila v. State*, 749 S.W.2d 611, 614 (Tex. App.—Corpus Christi 1988, pet. ref'd) (jury charge would lead to confusion and distraction).

The affirmative link doctrine has not escaped assaults on its validity. In *Brown*, we learned that the affirmative link analysis came to be a doctrine in its own right but never acquired the characteristics of a legal rule. 911 S.W.2d at 747. The doctrine was described as "only a short hand expression of what must be proven to establish that a person possessed some kind of drug knowingly or intentionally. *Id. Brown* rejected the assault upon the doctrine by those who claimed that it had been rendered defunct in light of the *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) decision. *Brown*, 911 S.W.2d at 745, 748-49. The affirmative link doctrine was proclaimed to be still alive and well but the link no longer had to exclude "every other outstanding reasonable hypothesis except the defendant's guilt" which proposition of law had been earlier dispatched by *Geesa*. *Id*. at 748.

*Evans*, 20 S.W.3d at 163-64, used the "new" link doctrine to dispose of the cause on appeal, but the signals given, *id.* at 161-62 n.9, may well portend further changes in the application note of the "link" doctrine.

evidence indicated that Joe Houston had a dog but the dog was not in the apartment at the time.[14]

Appellant denied ever taking care of the dog and disallowed any knowledge of cocaine in the residence.

Where the contraband is hidden or secreted, the State, in a possession of contraband case, must address whether the accused knew of the existence of the secreted place and its contents. *Lassaint*, 79 S.W.3d at 740 n.2; *Jenkins*, 76 S.W.3d at 712 n.2. The State must link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and its whereabouts and that the object possessed was contraband. *Ex parte Stowe*, 744 S.W.2d 615, 616-17 (Tex. App.—Houston [1st Dist.] 1987, no pet.); *Meyers*, 665 S.W.2d at 592; *see also Curtis v. State*, 519 S.W.2d 883, 885 (Tex. Crim. App. 1975).

The State contends that the knowing element of the offense is shown by the fact that the contraband found in the dog food bag was located in the apartment over which appellant had custody and control for five hours while caring for two children. Custody and control of a residence, if proven, are not dispositive of the knowledge of any contraband in that residence. *See Garza*, 990 F.2d at 174. Where the contraband is secreted, courts require additional facts and circumstances to prove the knowledge element: consciousness of guilt, conflicting statements, or an implausible account of events. *Rojas-Alvarez*, 451 F.3d at 334; *see also Castellano v. State*, 810 S.W.2d 800, 806 (Tex. App.—Austin 1991, no pet.). The State has not established any of the factors mentioned.

At best, the State has only shown that the contraband was hidden inside a dog food bag, without emitting any odor in Houston's apartment, where appellant did not live and was present

---

[14] A dog was heard barking on the police video that was admitted into evidence.

21

for only a few hours as a baby sitter. *See Kyte v. State*, 944 S.W.2d 29, 33 (Tex. App.—Texarkana 1997, no pet.). Unless our examination of general factors changes the picture, the State has not established independent and additional facts and circumstances to generate in combination, a link between appellant and the cocaine secreted in the dog food bag on the elements of knowledge and control.

## THE KITCHEN CABINETS

As described, police officers found in a closed but unlocked cabinet above the kitchen sink, a stack of seven "cookies" of crack cocaine weighing 94.57 grams. In another closed but unlocked cabinet under the sink, the police officers found a 12.64 gram "cookie" of crack cocaine inside a jar. In the same kitchen cabinet was also found a digital electronic scale, a sifter and a fork with 0.68 grams of cocaine residue attached. Joe Houston's fingerprints were discovered on the scale and its battery. Appellant's fingerprints were not found on the cabinets or items found therein. The State did not offer any specific evidence connecting appellant to the cabinets or contraband therein.

Appellant and the two children were on a couch in the living room when Officer Kyle entered the apartment. The State urges that during the five hours that appellant was in the apartment, it would be logical to assume that she would have been in the kitchen numerous times; that appellant would have been in close proximity to the contraband in the closed cabinets. Close proximity is a potential factor to be considered in the totality of the circumstances. *See Meyers*, 665 S.W.2d at 594. "Close" is a matter of degree. *Id.* Proof of mere proximity to contraband is insufficient to establish actual constructive possession or the element of knowledge. *United States v. Phillips*,

22

496 F.2d 1395, 1397 (5th Cir. 1974); *Hernandez v. State*, 517 S.W.2d 782, 784 (Tex. Crim. App. 1975); *Flores v. State*, 756 S.W.2d 86, 88 (Tex. App.—San Antonio 1988, pet. ref'd). Close proximity to the contraband, even when coupled with mere presence at the place where the contraband is found, do not together justify a finding of knowing possession of the contraband. *Meyers*, 665 S.W.2d at 592; *Woods v. State*, 535 S.W.2d 16, 18 (Tex. Crim. App. 1976). It is not enough to say that an accused was present in the apartment and thus was in close proximity to contraband found anywhere in the apartment. There must be other facts.

The State further contends that the kitchen cabinet cocaine was conveniently accessible to appellant during her stay at the apartment. The cocaine behind closed cabinet doors was not visible to the naked eye. The factor of "plain view" of the contraband is not here involved. The State argues that the cabinet doors were unlocked so that the cocaine was "plainly visible upon opening [the] kitchen cabinet doors." Thus, if appellant only made an effort to open the cabinet doors, the cocaine would have been plainly visible and conveniently accessible to her.

There was no evidence that appellant ever opened the doors or had any need to do so, or knew of the existence of the cabinet cocaine and its whereabouts and exercised custody and control of the same. There was no evidence that appellant had been handling cocaine. Under the circumstances, the factors urged by the State relating to the cabinet cocaine are of little probative value in establishing a connection between appellant and the cabinet cocaine. There must be other independent facts to show more than a fortuitous proximity to someone else's contraband.

23

## THE CERAMIC PLATTER

Officer Kyle testified that he found another amount of cocaine on a ceramic platter on the back of the top of the kitchen refrigerator. On the platter were small baggies of powdered cocaine and rocks of crack cocaine, a razor blade, and a plastic knife. The cocaine weighed 6.82 grams and the residue on the platter weighed 0.03 grams of cocaine. Officer Kyle stated the plate was in "plain view." It is, of course, the contraband itself that must be in plain view.

To connect appellant to the cocaine found on the platter, the State, *inter alia*, relies upon this factor of plain view. The State candidly acknowledges that whether the contraband was in plain view is judged from the perspective of someone placed in appellant's position. *See Oaks*, 642 S.W.2d at 177.

The 6' 1" tall Officer Kyle testified that when he walked into the kitchen, he "located" the platter on the back of the top of the refrigerator behind a tall box of cereal and a bag of corn chips. He acknowledged, however, that he had previously been told (apparently by the confidential informer) where to look to find the cocaine. The height of the refrigerator was not shown by the evidence. Appellant was shown to be 5' 6" tall and was in the living room on a couch with two small children when Officer Kyle entered the apartment. The State does not argue that the platter and the cocaine on the top of the refrigerator were visible to appellant from her position on the couch. The State contends that appellant had been caring for the children for hours in the apartment and would certainly have had occasion to use the refrigerator.[15] It argues that the cocaine on the platter would have been in appellant's plain view from a variety of perspectives. The State does not pinpoint the

---

[15] Officer Kyle testified that no contraband was found in the refrigerator.

24

possible locations or positions of appellant in the kitchen from which the cocaine on the platter would have been visible, alerting appellant that she was knowingly exercising control over a substance known to be contraband.

Appellant's fingerprints on the ceramic platter were the most damaging evidence against appellant, although the prints of undesignated dates were on the underside of the platter, not on the cocaine. Appellant was released after the search. It was only after the fingerprint evidence became available to the police nearly three months later that appellant was charged. The fingerprint evidence linked appellant, if it does, only to the 6.85 grams of cocaine and the residue on the platter, not to the other cocaine found in the apartment.

The platter was seized on December 4, 2003, by the police and turned over to Noah Villarreal, a crime scene specialist, on December 30, 2003. He testified that he lifted fingerprints (State's exhibit No. 22) from the back (underside) of the platter, but he was unsure just where. Villarreal also lifted Joe Houston's fingerprints (State's exhibit No. 23) from the platter. When asked whether they were from the top or the bottom, he responded: "I can't tell you. Doesn't matter." On re-direct examination, he could not recall whether there were a lot of overlapping prints on the platter.

Dennis Degler, fingerprint examiner for the Austin Police Department, testified that he had, during the trial, taken appellant's fingerprints from her right hand and the left middle finger (State's exhibit No. 26). Degler related that he had matched these known prints with State's exhibits Nos. 22 and 23 (lifted by Villarreal) and added that both were "made by the same fingers, same hand." On cross-examination, it was clarified that State's exhibit No. 22 contained appellant's right

25

thumb print and State's exhibit No. 23 contained appellant's left middle fingerprint. This latter exhibit also contained Joe Houston's fingerprints from the platter.

Degler acknowledged that the fingerprints on a good surface could "last there a good long time," "even years," and that china or ceramic plates would be good surfaces for preserving fingerprints. The State's evidence did not exclude the possibility that the fingerprints in question had been placed on the platter at some other time in the absence of the cocaine. Nevertheless, the presence of appellant's fingerprints on the platter is a factor to be considered in showing control of the cocaine. Appellant's fingerprints of undesignated dates are important in the totality of the circumstances because the officers, knowing the other circumstances, did not arrest appellant at the time of the search but released her. Only after her fingerprints were found on the platter was she charged and arrested.

We turn from the locations where the cocaine was found to other factors that may form a link to appellant.

**PRESENT AND ALONE**

Examining the factors that the State urges show a special connection between appellant and the contraband, we begin with "Present and Alone at the Time of Search."[16] Appellant lived elsewhere, but was present at Joe Houston's apartment with two small children at the time

---

[16] This factor is listed in *Olivarez*, 171 S.W.3d at 291, and quoted in *Evans*, 202 S.W.3d at 162 n.12. It is not consistently listed as a factor in other cases. *See, e.g., Edwards v. State*, 178 S.W.3d 139, 143 (Tex. App.—[1st Dist.] 2005, no pet.). It is not clear how much more this factor adds than "mere presence at the scene of the crime."

when the police decided to execute the search warrant. The State did not dispute the fact that appellant had been and was the baby sitter for Jada, Houston's daughter.

Mere presence of an accused at a place where contraband is found, even in close proximity thereto, does not in itself justify a finding of joint possession. *Meyers*, 665 S.W.2d at 592; *see also Palmer v. State*, 857 S.W.2d 896, 900 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (only person present in vicinity of contraband is insufficient). The mere presence of an accused at place where contraband is being possessed or used by others, and even the accused's knowledge of an offense by others, does not constitute joint possession of the contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981); *Winter*, 725 S.W.2d at 730-31; *Espinoza v. State*, 642 S.W.2d 202, 204 (Tex. App.—Houston [14th Dist.] 1982, no pet.). The mere opportunity to commit a crime does not establish the fact of the accused's commission of the crime charged. *Wilson v. State*, 184 S.W.2d 141, 143 (Tex. Crim. App. 1944), *overruled on other grounds*, *Blake v. State*, 971 S.W.2d 451, 456 n.18, 458-59 (Tex. Crim. App. 1998).

Appellant was at Houston's apartment for about five hours. She was delayed in leaving because Jada was not brought to the apartment until 2:30 p.m. by her grandfather and there was evidence that Jada's car seat had been left in an aunt's vehicle and was unavailable. The car seat was legally essential to travel by taxi, appellant's only means of transportation. Appellant testified that she still intended to take Jada to appellant's home when the search occurred.

The timing of a search, particularly where a search warrant is involved, as here, is generally within the discretion of police officers. *See* Tex. Code Crim. Proc. Ann. art 18.07

(West 2005) (giving officers "three whole days" to execute search warrant). The police officers may delay a search until an individual arrives or leaves the location involved, thus deciding who will be present at the time of search. Here, Joe Houston had been under surveillance by the police, and a confidential informant had given police information about Houston's possession of cocaine at the apartment, which was the basis for the search warrant. The search of the apartment, however, was executed in Houston's absence, when appellant was there with two small children. The fact that appellant was present at the search is nothing more than mere presence. There must be additional independent facts and circumstances to justify a knowing control of the contraband found. The State's first factor is tenuous.

**RIGHT TO POSSESS THE LOCATION**

The State cites the right to possess the location as a factor to be considered in establishing an affirmative link in the instant case. It claims that appellant had sole access to Houston's apartment for at least five hours prior to the search. The State notes that appellant had been to the apartment on other occasions, although she lived elsewhere.

The record does not support the State's claim. Appellant did not have exclusive possession and control of Houston's apartment where the contraband was found. There must, therefore, be additional facts and circumstances to link appellant to the cocaine. *Poindexter*, 153 S.W.3d at 406. Even custody and control of a residence where contraband is found is not

28

dispositive of the knowledge of any contraband located there, *see Garza*, 990 F.2d at 174, nor synonymous with control of the contraband. *Meyers*, 665 S.W.2d at 595.[17]

While appellant had been to the apartment at other times and stayed for five hours on the day in question, she did not have sole access to the premises. The State's suggested factor has no probative value.

## LARGE QUANTITY

Without citation to authority, the State asserts that the amount of contraband found may be a factor helping to link appellant to the cocaine. This is true. *See Villegas v. State*, 871 S.W.2d 894, 896-97 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The power of this factor can reasonably be expected to increase as the amount of drugs increase. *Roberson*, 80 S.W.3d at 740. Where a large quantity of contraband is involved, the factor is more effective in establishing the requisite link. *Id*. It may strengthen the inference that the accused was aware of the cocaine. However, the factor must be considered under the totality of the circumstances in each case.

In view of the information the police had about Joe Houston and the cocaine at his apartment, the amount of cocaine found there was hardly a surprise to the police. The question is whether the amount of cocaine discovered should be factored into the determination of any link between appellant and the cocaine under the circumstances of this case where, *inter alia*, appellant was present for five hours with two small children. Officer Kyle testified that there was no odor of

---

[17] The fact that a defendant rented the premises upon which narcotics are found, if others also occupied the premises, is not usually sufficient in and of itself to justify a finding of joint possession. *Guiton v. State*, 742 S.W.2d 5, 8 (Tex. Crim. App. 1987). Here, appellant was not even a renter but temporarily present on the premises as a baby sitter.

cocaine on the premises at the time of the search. The bulk of the cocaine was well-hidden at the bottom of a dog food bag, behind closed kitchen cabinet doors, or on the back of the top of a refrigerator. Appellant did not have any cocaine on her person, or cocaine residue on her clothes, and she was not under the influence of any contraband.

If it can be said that the large quantity of contraband found was indicative of appellant's awareness of the contraband, despite the lack of odor or the locations where it was found, it must be remembered that one is not a party to joint possession even if she was present and had knowledge of an offense by another. *Oaks*, 642 S.W.2d at 177. A defendant's knowledge of the presence of the contraband is insufficient to establish the requisite mental state knowledge of his or her possession of the drugs. *Cf. id.* at 177-78.[18] Under the circumstances of this particular case, the factor of a large quantity of contraband is of little or no value in linking appellant to the cocaine.

### SUSPICIOUS AREA—SUSPICIOUS CIRCUMSTANCES

The State asks us to consider another factor which it has labeled "Suspicious Area Under Suspicious Circumstances." This factor is based in part on Officer Gatlin's testimony that, within thirty to sixty minutes before the search, two individuals came to Houston's apartment for a short time and left. He did not know these individuals and did not detain them. He did not know if

---

[18] This proposition of law is best explained by *Molina v. State*, which cannot be cited as authority. *See* Tex. R. App. P. 77.3; Nos. 205-03, 206-03 (Tex. Crim. App. Oct. 1, 2003), *available at* http://www.cca.courts.state.tx.us/opinions/HTMLopinionInfo.asp?OpinionID=12156 (not designated for publication). In *Molina*, the Texas Court of Criminal Appeals, speaking through Judge Womack, set the stage for the proper handling of future knowing possession of contraband cases, particularly in light of the later decision in *Evans*. *See* 202 S.W.3d at 161-62 n.9. It is respectfully urged that the Court publish *Molina* to aid the bench and bar.

they were neighbors. Officer Gatlin testified that what he observed was indicative of narcotic foot traffic. He did not observe any transaction between appellant and these two individuals.[19] Appellant acknowledged that the two people came to Houston's apartment, asked for him, and departed when told that he was not there. The State's evidence revealed that at the time of the search, there was no odor of cocaine on the premises, appellant had no cocaine on her person, and had no cocaine residue on her clothes. No cash or tally sheets were found, and appellant's fingerprints were not on the scales, although Houston's fingerprints were found there. Appellant denied possessing or handling cocaine. She testified that she did not even know what the digital scale was until the police told her.

To further support the factor urged, the State calls attention to Officer Kyle's rebuttal testimony that on some undesignated November evening about a week before the search, and after Houston left the apartment, Kyle had seen seven or eight people go to the apartment, stay a short time and leave. Officer Kyle stated that this activity was indicative of narcotic foot traffic. He did not know these individuals and did not detain them. Without any discussion of his position of surveillance or the lighting on the November evening, Officer Kyle, using only a booking photograph, identified appellant as the person who answered the door on this undisclosed date. Officer Kyle made no police report of the incident described in his rebuttal testimony.

---

[19] Officer Gatlin admitted that the police did not base narcotic trafficking solely "on foot traffic in and out." It was "one thing we look at"; he said that usually there are tips and other information. Officer Gatlin acknowledged that there was not much foot traffic or activity in the neighborhood at the time of his surveillance. When asked on cross-examination if what he saw was equally consistent with social visits or visits unassociated with drug trafficking, Officer Gatlin responded: "Could be."

The State notes that during the search, a Hispanic woman came to the apartment, was arrested for having a marihuana cigarette, given a citation, and released. There was no contact between appellant and this woman, who was not called as a witness.

There was little evidence about the area, except that Houston's apartment was in a "lower income area," composed of apartments and duplexes with "[f]our duplexes together along the street" and with some trash in the neighborhood. There was no description that the area was a high-crime area or neighborhood. Without more, it would be difficult to label the area suspicious. While the circumstantial evidence of possible narcotic foot traffic arouses some suspicions, proof of the factor relied upon by the State amounts to no more than a mere conjecture. *See Dickey v. State*, 693 S.W.2d 386, 389 (Tex. Crim. App. 1984); *Lassaint*, 79 S.W.3d at 746. The factor has no real probative value in connecting a link between appellant and the cocaine in various places in Houston's apartment. A suspicion, even a strong one, is insufficient to give substance to this factor.[20]

---

[20] We observe that in jury argument the prosecutors improperly attempted to use the above described testimony to urge the jury to convict appellant, without evidentiary support, of the offense of selling cocaine—an offense with which she was not charged and for which the jury was not authorized to convict. Further, the prosecutors went outside the record to assure the jury that charges were pending against Houston in federal court.

In opening argument, the prosecutor alerted the jury: "Just know that the question comes down to whether or not she had knowledge that there was drugs in the house, whether she was participating in the selling of drugs." Later, the prosecutor stated that Officer Kyle had seen appellant selling drugs a week before the search. There was no evidence to support such argument. The trial court overruled appellant's objection to this "mischaracterization of the evidence" after the State had simply responded: "This is argument." Thereafter, appellant's trial counsel did not object to any further argument.

The State cites *Classe v. State*, 840 S.W.2d 10 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd), to support the claimed factor of "a suspicious area under suspicious circumstances." *Classe* is distinguishable on its facts and the law. It did not involve the factor here in question. In

Still later, the prosecutor argued: "She was there and selling drugs . . . all of these crack-heads are come in [sic] and buying drugs from her. . . . . She was there selling drugs." There was no evidence that the unknown and undetained individuals were "crack-heads" and no evidence that appellant was seen selling cocaine or drugs to anyone. The prosecutor further argued:

> There weren't any mistakes made in this case. The right person is sitting in that chair today. And Joe Houston is going to be sitting in a chair in federal court facing charges for this, just like she is. There are two people that are going to take responsibility for this crime, Joe Houston and Chandell Allen.

This was an "out of the record" argument. In the jury's absence, it was established that no State charges had ever been filed against Houston and were not contemplated. The police were attempting to get the federal authorities to "adopt" Houston's case without any showing of any success. The State denied having a "deal" with Houston or using him as an informer.

In his closing remarks, the prosecutor's last words to the jury were:

> Again, ladies and gentlemen, I think that the State has met the burden of proof in this case. And we're not asserting that this woman is responsible for all of the drug trade that goes on in the United States or even in Travis County, but she's a part of it. Just like everybody else that participates in the selling of drugs is a part of it and they contribute to the overall problem. No, she's not responsible for the drug problem in the United States. And that's not what we're asking. *She is guilty of a first-degree felony of selling drugs from that house*.

(Emphasis added).

Appellant's counsel did not object and the trial court did not intervene.

It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense with which he or she is charged. *Owens v. State*, 827 S.W.2d 911, 914 (Tex. Crim. App. 1992); *Templin v. State*, 711 S.W.2d 30, 32 (Tex. Crim. App. 1986); *Reyes v. State*, 69 S.W.3d 725, 735 (Tex. App.—Corpus Christi 2002, pet. ref'd).

33

addition to surveillance of the defendant's residence on the day of the search, in *Classe*, there had been an additional ten days of surveillance preceding the search. *Id*. at 11. All surveillances indicated narcotic foot traffic. *Id*. Moreover, the defendant fled when the police approached, he was found hiding in a closet with $1,996 in cash on his person, and male clothing was found in the bedroom where a large amount of cocaine was found. *Id*. at 11-12. We do not deem *Classe* controlling. The factor urged does not connect appellant to the cocaine.

## OTHER CONTRABAND

The State asserts that appellant was in possession of another type of contraband at the scene. Appellant admitted that she had a marihuana "roach" in her possession, but denied that she had smoked it. Officer Kyle described the "roach" as "hot" when he saw it. Possession of another type of contraband than that charged is one of the potential factors that may be considered in determining a link between the accused and the contraband in question. *See Batiste v. State*, 217 S.W.3d 74, 80 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Chavez v. State*, 769 S.W.2d 284, 288 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). Apparently, the reasoning is that once an accused possesses or uses one type of contraband, it is more likely that the accused is also in knowing possession (control) of the contraband charged in the indictment.

Here, appellant indicated that she brought the marihuana with her when she arrived at Houston's apartment, premises over which she did not have exclusive possession, to pick up Jada Houston, whom she was to baby sit. Appellant denied having any cocaine and none was found on her person. No cocaine residue was on her clothing and she was not under the influence of any type of contraband. There was no odor of cocaine at the search scene, according to Officer Kyle.

34

Possession of the "roach" is a factor to be considered, but it carries little weight or probative value in determining that appellant had custody and control of the cocaine found and knew what it was and the contraband's whereabouts. It must be recalled that Officer Kyle testified that appellant had no tell-tale marks indicating that she had used cocaine, and no evidence showed that she had any prior narcotic conviction. At the conclusion of the search, appellant was released, was not arrested for the instant offense, and was not even given a citation for possession of the "roach."

**PARAPHERNALIA IN VIEW OR FOUND ON THE ACCUSED**

The State relies on this factor to help generate a link between appellant and the cocaine found. The State in its brief depends *solely* upon the finding of two razor blades. One razor blade was found on a bar separating the kitchen from the living room. The other razor blade was found in the diaper bag belonging to appellant's child. The State cites *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd), which noted that "single-edged" razors are often used to cut rocks of crack cocaine. This is true, but razor blades of all types are used for shaving and other domestic purposes or uses. Appellant did not have to be believed, but as noted, she testified that she did not know how the razor blade got into her child's diaper bag and that she used razor blades at her home.

The record does not reflect that the two razor blades found were "singe-edged,"[21] had been used in cutting cocaine, or bore the fingerprints of any person. The State has not demonstrated

---

[21] The State introduced State's exhibit No. 8 as "razor blades" without designating the number. It appears from the evidence that the items were in a plastic bag covered with a black powder. The exhibit is not in the record. The court reporter tells us in the record that the exhibit cannot be copied.

35

how these razor blades alone, without cocaine residue, promote any special connection between appellant and the cocaine found in Houston's apartment, save by speculation and conjecture.

## CONSCIOUSNESS OF GUILT

The State seeks to use "consciousness of guilt" as a factor contributing to a link between appellant and the cocaine found at Houston's apartment on December 4, 2003. "The logical force of this factor depends on the nature of the specific actions involved." *Roberson*, 80 S.W.3d at 740. A general consciousness of guilt does not prove an accused guilty of the specific crime with which he or she is charged. *Id*. According to the State's evidence, at the time of the search, appellant did not display any consciousness of guilt. She did not attempt to flee, did not try to hide anything, made no furtive gestures, and made no conflicting or incriminating statements. The police officers described her as being cooperative and caring for the two small children present. Appellant did not tell any implausible story. At the conclusion of the search, the police did not arrest appellant. She was released without charges being filed or citations issued.

The State does not rely upon any specific action at the scene of the search to support this factor. It calls attention only to March 3, 2004, when appellant was arrested at her home on New York Avenue, another location. Officer Kyle stated that when he and other officers approached appellant's house, he saw appellant in the doorway with a cell phone and that appellant "ran inside" her house as the officers advanced. He later heard the sound of a flushing toilet. In addition to appellant, a male adult (not Houston) and some children were in the house at the time.

This specific activity at a different location almost three months after the search is not a "consciousness of guilt" factor and it does not contribute to any finding of a link between appellant and the contraband discovered.[22]

## GUILT BY ASSOCIATION

The State appears to imply that appellant was not just a baby sitter, but someone who had an association—however brief—with Joe Houston, a known narcotic dealer, and that this association leads directly to an inference of guilt. Such guilt by association would obviously be contrary to our system of justice. *Roberson*, 80 S.W.3d at 739; *Wincott v. State*, 59 S.W.3d 691, 700-01 (Tex. App.—Austin 2001, pet. ref'd) (rejecting effort to equate guilt by association with corroboration); *see also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178-79 (1954) (Douglas, J., concurring) ("guilt by association [is] one of the most odious institutions of history. . . . Guilt under our system of justice is personal."). "The line between knowing possession and guilt by association can be very thin." *Phillips*, 496 F.2d at 1397.

## CONCLUSION

Ultimately, the question of whether the evidence is sufficient to sustain a conviction for knowing possession of contraband must be answered on a case-by-case basis. *Whitworth*, 808 S.W.2d at 569. Here, the State relies upon circumstantial evidence to convict appellant, who

---

[22] Nervousness is a tenuous link to contraband because most people are somewhat nervous when confronted by a police officer. *Lassaint*, 79 S.W.3d at 744; *see also Glasi v. State*, 681 S.W.2d 599, 602 (Tex. Crim. App. 1984); *Hernandez v. State*, 867 S.W.2d 900, 905 (Tex. App.—Texarkana 1993, no pet.).

was baby sitting at Houston's apartment for five hours, of the first-degree felony of knowing possession of all the cocaine in the apartment.

We review the legal sufficiency of the evidence by following the *Jackson* standard, as earlier noted, including viewing the evidence in the light most favorable to the verdict. We are mindful of the numerous caveats concerning the use of circumstantial evidence to establish knowing possession of contraband, including the newly-coined "link" doctrine. Moreover, the State need not exclude every other reasonable hypothesis except the guilt of the accused. *Sonnier v. State*, 913 S.W.2d 511, 516 (Tex. Crim. App. 1995); *Brown*, 911 S.W.2d at 745-49; *Geesa v. State*, 820 S.W.2d 154, 155-61 (Tex. Crim. App. 1991), *overruled on other grounds*, *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846.

We have examined all the evidence in the light most favorable to the jury's verdict, but are compelled to conclude that the evidence is insufficient to support a reasonable inference that the elements of the offense charged were proven beyond a reasonable doubt. The State did not sustain its burden. This is because the knowledge that is inferred does not satisfy the requisite mental state for the offense charged. The evidence offered by the State tends to infer that appellant knew the cocaine was present in the apartment—not that she was aware that she exercised care, custody, control, and management of the cocaine. Moreover, the State did not sustain its burden of proof as to the other element of possession.

Appellant's fingerprints of undesignated dates were found on the underside of the ceramic platter without any showing of how or when the prints occurred. There were no fingerprints

38

in the contraband or items on the platter, nor was the contraband in plain view of appellant. One factor alone possibly indicating guilt cannot trump any number of other factors which do not tend to establish knowing possession. *Jenkins*, 76 S.W.3d at 719 n.13.

The evidence in the instant case contains a number of inferences that do not by themselves constitute proof of guilt. A jury may not reasonably infer an ultimate fact from meager circumstantial evidence, none more probable than another. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex. 1997). To be legitimate or permissible, an inference must be deduced as a logical consequence of the facts presented in evidence, and must be a logical and rational connection between the facts in evidence and the fact to be inferred. *United States v. Michelena-Orovio*, 702 F.2d 496, 504 (5th Cir.), *aff'd on reh'g*, 719 F.2d 738 (5th Cir. 1983) (en banc). With regard to the sufficiency of evidence in circumstantial evidence cases, one inference cannot be based upon another inference to reach a conclusion or sustain a conviction. *United States v. Schorr*, 462 F.2d 953, 959 (5th Cir. 1972); *Williamson v. State*, 244 S.W.2d 202, 204 (Tex. Crim. App. 1951); *Lee v. State*, 214 S.W.2d 619, 622 (Tex. Crim. App. 1948). The stacking of one inference upon another is not considered evidence. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003); *Citizens Nat'l Bank v. Allen Rae Indus., Inc.*, 142 S.W.3d 459, 482 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g).

Evidence in a knowing possession of contraband case must amount to more than mere conjecture. *Dickey*, 693 S.W.2d at 389. Proof that amounts to only a strong suspicion or mere probability of guilt is insufficient to sustain a conviction. *Urbano v. State*, 837 S.W.2d 114, 116 (Tex. Crim. App. 1992); *In re J. M. C. D.*; 190 S.W.3d 779, 781 (Tex. App.—El Paso 2006, no pet.);

*Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd); *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If circumstantial evidence provides no more than a suspicion, the jury is not permitted to reach a speculative conclusion. *Louis v. State*, 159 S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet. ref'd). It is the function of appellate courts to ensure that no one is convicted of a crime except upon proof of the elements of the offense beyond a reasonable doubt. *Skelton v. State*, 795 S.W.2d 162, 167 (Tex. Crim. App. 1989). Due process requires no less. A reviewing court must act as a due process safeguard. *See Gollihar v. State*, 46 S.W.3d 243, 245-46 (Tex. Crim. App. 2001). "In the final analysis, as the Supreme Court has put it, criminal substantive due process protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Michelena-Orovio*, 702 F.2d at 506 (quoting *In re Winship*, 397 U.S. at 364).

Here, given all the evidence, we find the verdict is unsupported by proof of all the essential elements of the offense charged. The Fourteenth Amendment to the United States Constitution requires that this Court reverse and order an acquittal. *See Guevara*, 152 S.W.3d at 49. The legal sufficiency of the evidence is based on due process. *Gollihar*, 46 S.W.3d at 245. It is a question of law. *Matson*, 819 S.W.2d at 846; *Roberson*, 16 S.W.3d at 165. Appellant's first point of error is sustained.

In view of our disposition of appellant's initial contention, we do not reach points of error two and three.

Having sustained appellant's first issue, we reverse the conviction and render a judgment of acquittal. *See Burks v. United States*, 437 U.S. 1, 17 (1978); *Greene v. Massey*, 437 U.S. 19, 24 (1978); *Guevara*, 152 S.W.3d at 49.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Pemberton and Onion*;
   Dissenting Opinion by Justice Pemberton

Reversed and Acquittal Rendered

Filed: March 7, 2008

Publish

Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).